In the Matter of IMPERIAL '400' NATIONAL, INC., a Delaware Corp., et al., Debtors.

No. B 656–65.

United States District Court, D. New Jersey.

Oct. 12, 1971.

Nolan & Lynes by Joseph M. Nolan, and Jerome M. Lynes, Newark, N. J., for Trustee.

Kleinberg, Moroney, Masterson & Schachter by Sheldon Schachter, Newark, N. J., for Creditors Committee.

Stephen Bosin, New York City, for S. E. C.

Laurence W. Levine, New York City (appearing by affidavit), for Union Bank of Los Angeles.

## OPINION

SHAW, District Judge.

Counsel for the Trustee, Joseph M. Nolan, Esq., filed a petition seeking a fourth interim allowance of counsel fees for the period from September 1, 1969, to August 31, 1970, and on April 15, 1971, the Court issued an order to show cause why the fourth interim allowance should not be granted and made the same returnable on May 10, 1971. A hearing was commenced on May 10th and continued on May 12, 1971. The matter was then referred to the Honorable Vincent J. Commisa, Referee in Bankruptcy, for continued hearing and for his report of findings and recommendations to the Court as a Special Master. The hearing was continued by the Special Master on June 8, 1971, and his report of findings and recommendations was filed on July 13, 1971, copy of which is appended hereto for ready reference.

The propriety of consideration of a fourth interim allowance of counsel fees was approved by the United States Court of Appeals. In In re Imperial '400' National, Inc., 432 F.2d 232, 242 (3rd Cir. 1970) the court stated:

> We note, again, that "we are impressed * * * with the apparent success of the reorganization to date" (page 237 of August 18 opinion). Also we note that periodic awards of interim compensation in the future, as well as interim compensation for the period from September 1, 1969 to the present, may be granted in the discretion of the District Court if "necessary" and after comment by the creditors and the Securities and Exchange Commission.

Pursuant to the direction of the Court, notice was given that a hearing would be held on the report of the findings and recommendations of the Special Master on August 4, 1971. The hearing was continued by direction of the Court to August 5, 1971. The only appearances were by Jerome M. Lynes, Esq., attorney for counsel to the Trustee, Stephen Bosin, Esq., attorney for the Securities and Exchange Commission, and Sheldon Schachter, Esq., attorney for the Creditors Committee. Laurence W. Levine, attorney for the Union Bank and Chairman of the Creditors Committee, forwarded an affidavit objecting on behalf of Union Bank to any fourth interim allowance of counsel fee in excess of $45,000. Though notice of the hearing was given to Mr. Levine, he states in his affidavit that:

> Union Bank is not appearing at the hearing personally because a) the Court has indicated that it does not desire its participation—*nor will it listen to it*, and b) it is not appearing personally, in addition to the Court's previous statements about it, because there have been too many recent heart attacks in the profession caused by emotional reactions. * * *

There is no foundation in fact for the statement that the Court indicated that it did not desire an appearance by a representative of Union Bank. It is true, as indicated by Mr. Levine's affidavit, that there were some differences of opin-

ion between the Court and Mr. Levine relating to procedural matters and observance of rules of the court, specifically that part of General Rule 4(C) which requires that only an attorney-at-law of this court may file papers, enter appearances for the parties or file stipulations. This is not a rule promulgated by any single district court judge in this district. It is a rule adopted by the entire court which has been in effect for many years and the Clerk of the Court has been directed to require observance of it. Mr. Levine has chosen to ignore it and by-pass the Clerk of the Court by sending his papers directly to me. He has never been denied the opportunity to appear and argue any matter nor has he ever made any application for relaxation of Rule 4 as to him.

It would serve no useful purpose to comment here on what Mr. Levine conceives to be the grievances of his client, Union Bank, and his own personal grievances. He has an absolute, unqualified right to disagree with any ruling of the Court and with any proposal of the Trustee or counsel for the Trustee relating to the administration of the estate. But, in fairness, it is the opinion of the Court that he should not be permitted to associate such disagreements with allegations of lack of integrity and suggestions that there is deliberate mismanagement of the estate unless there is a factual basis in support thereof. In the discharge of the duty cast upon it by law in the supervision and control of the administration of the Chapter X proceeding, this Court in every matter that came before it has exercised its own independent judgment and does not misconceive its function to the extent that it treats advice and suggestions of the

Securities and Exchange Commission as directives which seem to be a matter of concern to Union Bank as evidenced by a letter written to the Chairman of the Commission on October 28, 1970.

■ It is felt by the Court that the affidavit of Mr. Levine setting forth the objection of his client, Union Bank, to a fourth interim allowance to counsel for the Trustee should be read in context with other affidavits and correspondence which he has forwarded to the Court detailing the grievances of his client and his own personal feelings. Accordingly, the Clerk of the Court is directed to file all of this material so that it will be available for review of any questions Mr. Levine chooses to raise. Though Rule 4(C) is relaxed for the purpose of permitting the filing of such material, this is not to be construed as a continued relaxation of the rule. If, for good cause shown, the rule should be relaxed as to future papers, application for such purpose, made in accordance with the rules and practice of the court will be entertained.

Sheldon Schachter, appearing as counsel for the Creditors Committee, advised the Court that the majority of the committee had no objection to a fourth interim fee, but felt that it might be slightly high and noting also that the hourly reports included time spent in connection with litigation arising out of rulings of the Court on allowances of counsel fees.[1]

Mr. Bosin, counsel for the Securities and Exchange Commission, did not oppose the award of a fourth interim allowance of counsel fees, but directed attention to the fact that time spent included hours in argument concerning interim fee awards before the United

---

1. MR. SCHACHTER: If your Honor pleases, the Creditors Committee met on this fee application quite some time ago. We had a 2 to 1 vote on it. There is no objection on the majority's part to an interim fee, recognizing the hardship aspect. We are a little constrained, however, as to the amount. We feel that the criteria may here be slightly high, but leave that up to the Court. The fees for the com-

parable prior period were considerably less. Mr. O'Neill, when he made this fourth—I believe this was his fourth application—did not exceed his previous applications by the amount that this one does.

We do note that included in the hourly reports was the time spent in relationship to the 3rd Circuit on the fee issue.

States Court of Appeals, and further, that the expense claimed for Xeroxing was in excess of the actual cost.[2]

Independent review of the record of services rendered by counsel for the Trustee from September 1, 1969, to August 31, 1970, leads the Court to the conclusion that the findings of the Special Master as set forth in his report are amply supported. The Court is not entirely in agreement with the recommendations. The Court also has the benefit of personal knowledge of the legal services performed and the nature of the problems which were encountered. In fact, since the appointment of counsel for the Trustee on February 24, 1966, all petitions filed were reviewed by the Court and every action of any consequence which was taken was considered by the Court before approval was granted. Very few matters have been referred to the Referee in Bankruptcy as Special Master. Indeed, attention to this estate has involved many days and often a week or more in every month to assure continued expeditious progress toward adoption of a plan of reorganization that would be fair, equitable and feasible to all interests involved. The vexatious problems which arose from week to week are too numerous to recite in detail here but they may be briefly summarized as falling within the following general categories.

1. Recovery of assets which were being lost by methods of accounting by co-owners in effect prior to the Chapter X proceeding; 2. discovery of funds which had been misapplied and actions to compel turnover, including in some instances reference of the derelictions to the United States Attorney; 3. the attempts of co-owners in some instances to misappropriate funds and to resist control of management;[3] 4. the vexatious problems of threatened mortgage foreclosures and the application of varying State laws in thirty-eight States as they related to the complex financing of each motel and the legal effect of agreements upon which the Debtor entered before the Chapter XI proceeding.

The complexity of the affairs of the Debtor were not fully conceived at the time the Chapter XI petition was dismissed. See In re Imperial '400' National, Inc., 274 F.Supp. 342 (D.C.N.J. 1966). Counsel fees paid out on the eve of the filing of the Chapter XI petition in anticipation of bankruptcy were not readily discernible upon the available records. Here again, diligence and accounting experience unearthed assets of the estate which would not have been apparent if the records kept by the Debtor corporation were taken at face value. See In re Imperial '400' National, Inc., 274 F.Supp. 351 (D.C.N.J.1967). Parenthetically, in connection with the refund of counsel fees, it might be added that the plenary action to which reference is made in In re Imperial '400' National, Inc., *supra,* to recover $24,000 taken for counsel fees for work allegedly performed over a period of approximately a year

2. MR. BOSIN: Our remarks appear in the report of the Special Master that was filed with the Court on July 13, 1971. I wish to make two statements in addition to the statements that I made before. One is that our recommendation did not include the hours that were spent in argument concerning the interim fee awards before the 3rd Circuit Court of Appeals. The second point which I wish to make is that we once again wish to call the Court's attention to the fact that we feel that the $3,101.25 that was requested for Xeroxing 12,405 pages represents an excessive amount and one-half or $1,550.62 be denied. The Referee awarded twenty cents per page, which would be a reduction of only $620.25 from the amount requested.

3. It is quite understandable that some co-owners who had been induced to invest their life savings in a motel were desperate to recoup some part of what they conceived to be their loss. Continuing on-the-spot, unannounced check of operations at motels were necessary in many instances to assure proper accounting for cash receipts for motel rentals. In this area the expertise of counsel for the Trustee as a certified public accountant with extensive investigative experience coupled with legal competence did much to improve the financial status of the Debtor.

was recovered in substantial part together with an agreement of the attorney involved not to claim any amount for representing the Debtor in the bankruptcy proceedings.

The question of valuable consideration for promotional stock also presented a difficult problem which was settled advantageously to the Debtor. There were also attempts on the part of some co-owners to take motels out of the Chapter X proceeding. Further attempts at this were frustrated after the decisions in In re Imperial '400' National, Inc., 429 F.2d 671 (3rd Cir. 1970), and In re Imperial '400' National, Inc., 429 F.2d 680 (3rd Cir. 1970). Many more examples of the difficulties encountered in the administration of this estate could be related with commendation to the Trustee and counsel to the Trustee for the manner in which they were solved and the extent to which favorable disposition enhanced the financial status of the estate. One outstanding example that comes to mind readily is the recovery of the Little Rock, Arkansas, motel which had been turned over to a bank on a quit claim deed in the Chapter XI proceeding without any consideration and without exoneration of the Debtor from outstanding liabilities. There has also been a continuing reduction of liabilities of the Debtor by disposition of claims and motels operating at a loss with no likely prospects of future profit. Due to the quality of the services performed and the almost daily attention to the affairs of the Debtor, its financial status has reached a point where it has attracted a number of good proposals for a plan of reorganization. It is true that this has taken a substantial period of time and that more time will be necessary before it can be determined which of the proposed plans of reorganization is the most fair, equitable and feasible for all interests concerned. It is understandable that a large creditor such as a bank would desire substantial salvage at the earliest possible date. But the application of equitable principles requires that the multitude of small people involved in the venture with their life savings, including creditors, stockholders, and co-owners, together with the large creditors, obtain the best possible return of their investments. Shrewd promotion made this corporate monstrosity of financing possible and the undoing of it in substantial degree could not be accomplished overnight.

The burden of work cast upon the Court in this litigation since 1966 has been constant and great and the Court is extremely anxious to take the Debtor out of bankruptcy at the earliest possible date. The Court is also satisfied that the Trustee and counsel for the Trustee are equally anxious to unburden themselves of the daily supervision and attention which the administration of the estate requires. There have been recurring instances where economic hardship to counsel for the Trustee would provide tempting motivation to devote more time to the general practice of law, but he has been instructed by the Court from time to time to give priority of attention to the problems of this estate and, together with the Trustee, to move the estate toward a plan of reorganization as expeditiously as practicable.

The Court finds that counsel for the Trustee has been loyal and faithful to his commitment and has, in accordance with instructions of the Court, given priority to all matters which would contribute to increased financial success and to all other matters to take the Debtor out of bankruptcy at the earliest possible date. In reaching a determination as to the amount of a reasonable allowance which will alleviate severe economic hardship, the Court has taken into consideration the time spent, the intricacy of the problems involved, the size of the estate, the vexatious litigation that had to be conducted in many States, the assets retrieved, the improved operation of motels, the financial ability of the Debtor to pay an allowance, the results achieved in improving the financial condition of the estate, the character, ability and experience of counsel and the skill employed. The Court has concluded that compensation at the rate of $25 per hour for partner time and $15 per

hour for associate time is reasonable and sufficient to alleviate the economic hardship that has developed.

■ There has been satisfactory proof that counsel for the Trustee kept contemporaneous accurate records of time. The total partner hours amount to 1,714¼ hours inclusive of time spent on fee litigation which should be deducted. That time amounts to 99¼ hours, which, when deducted, leaves 1,615 partner hours at the rate of $25 per hour producing a total of $40,375. The total of associate hours is 1,804¾ from which 286½ hours should be deducted as time spent in fee litigation. This leaves a total of 1,518¼ associate hours at the rate of $15 per hour which (eliminating the fraction) produces a total sum of $22,770. Combining compensation for partner hours and associate hours the total is $63,145. A very conservative figure of overhead in this metropolitan area would be 45%. Applying that, the take-home pay for Mr. Nolan and his partners would be approximately $34,730. It is the opinion of this Court that this amount representing compensation to counsel for the Trustee and his two partners for a period of one year for almost full-time work is not exorbitant and could not be considered as full compensation, but only such as would relieve economic hardship and make it possible for counsel for the Trustee to continue the kind of attention that the Court has demanded and he has given to the affairs of the Debtor.

■ The total out-of-pocket disbursements for Xeroxing is claimed to be $3,101.25. At the hearing before the Special Master counsel admitted that actual cost would be approximately one-half that amount. Whether or not this was based upon cost of leasing the Xerox equipment is not entirely clear. Nevertheless, in the light of the statement by counsel, only one-half will be allowed amounting to $1,550.62. If at the time of final allowance it can be shown that in addition to costs arising out of a rental agreement there were other out-of-pocket disbursements such as paper and related supplies, that may be claimed.

Accordingly, counsel for the Trustee will be allowed as compensation for services for the period from September 1, 1969, to August 31, 1970, the sum of $63,145 and the sum of $2,878.30 for disbursements.

An appropriate order may be submitted.

## APPENDIX
### REPORT OF SPECIAL MASTER

To the Honorable Robert Shaw

Judge of the United States District Court for the District of New Jersey

Honorable Vincent J. Commisa, Referee in Bankruptcy, duly appointed special master herein, by Order dated May 26, 1971 heard the evidence on the issues presented by the Petition of Joseph M. Nolan, Esq., Attorney for the Trustee, for a fourth interim allowance and out of pocket disbursements filed with the District Court on April 15, 1971 and having considered the Petition filed and the testimony of May 10, 1971, May 12, 1971 and June 8, 1971, the exhibits marked into evidence and the recommendation of the Securities Exchange Commission and after due deliberation respectfully reports as follows:

### FINDINGS OF FACT

1. That Joseph M. Nolan, Esq. was appointed attorney to the Trustee of the above-named Debtor Corporations by Order of this Court dated February 24, 1966.

2. That Joseph M. Nolan, Esq. was admitted to the Bar of the State of New Jersey in November of 1949.

3. That he maintains law offices under the firm name of Nolan and Lynes, P.A., at 60 Park Place, Newark, New Jersey.

4. That Joseph M. Nolan, Esq. is a graduate of New York University where he majored in the field of accounting and is a Registered Municipal Accountant in the State of New Jersey and a Registered Board of Education Accountant in that state.

5. That Joseph M. Nolan, Esq. is a graduate of Rutgers University School of Law.

6. That he has an extensive experience in the public accounting field and in the auditing of business concerns.

7. That he was, for a period of five (5) years, a Treasury Agent for the United States Internal Revenue Service and had extensive experience in the audit of individual, corporate and Trust returns.

8. That he was employed, after graduation from Law School, as an associate by the firm of Pitney, Hardin, Ward and Brennan, now known as Pitney, Hardin and Kipp, and was associated with that firm for a period of five (5) years before establishing his own law firm.

9. That he has extensive investigatory experience not only as an agent in the Treasury Department but also as General Counsel in the investigation of the Municipal affairs of the City of Jersey City; this appointment was made by a Judge of the Superior Court of New Jersey.

10. That he has been engaged in his own practice for a period of fifteen (15) years and has had extensive experience in reorganization and bankruptcy work.

11. That he has been appointed by the Bankruptcy Court and by the District Court of New Jersey in other matters involving Chapter X and XI proceedings and has had extensive experience in this type of work.

12. That he is a member of the American Bar Association and a member of the Taxation Committee of that Association.

13. That he is a member of the New Jersey Bar Association and a Trustee of that Association and a member of numerous committees.

14. That he is a member of the Essex County Bar Association and also holds membership on many committees.

15. That he was appointed a Special Master in railroad reorganization proceedings by the United States Court of Appeals for the Third Circuit in September of 1970.

16. That Joseph M. Nolan, Esq., attorney for the Trustee, had previously received interim compensation as follows:

| Period Covered | Interim Allowance |
|---|---|
| February 24, 1966—April 15, 1967 | $45,000.00 |
| April 16, 1967—July 1, 1968 | 60,000.00 |
| July 2, 1968—August 31, 1969 | 45,000.00 |

17. That Joseph M. Nolan, his partners and associates expended the following scheduled hours during the period from September 1, 1969 through August 31, 1970, as follows:

| (1) Attorney | (2) Hours * | (3) Total Partner Hours | (4) Total Associate Hours | (5) Inclusive of Hours Prep. & Defending Application For Fees |
|---|---|---|---|---|
| Joseph M. Nolan (Partner) | 1,476.½ | | | |
| Jerome M. Lynes (Partner) | 131.¼ | | | 98.¼ |
| James M. Bell (Partner) | 106.½ | 1,714.¼ | | 1. |
| Ernest R. Nuzzo (Sr. Associate) | 1,475.¼ | | | 143.¾ |
| Jay Scott MacNeill (Assoc) | 26. | | | 19. |
| N. Peter Conforti (Assoc) | 294.¾ | | | 123.¾ |
| Morris J. Levin (Assoc) | 8.¾ | | 1,804.¾ | |
| Total | 3,519. | 1,714.¼ | 1,804.¾ | 385.¾ |

* See Column 5

18. That the time set out in Paragraph 16 above was substantiated by time sheets kept by the firm of Nolan and Lynes and were examined by representatives of the Securities and Exchange Commission and the following

statement was made by Stephen R. Bosin, Esq.:

> "MR. BOSIN: Your Honor, our examination of counsel's time records indicates that they were adequately and contemporaneously maintained with respect to 1658 hours which were recorded by associates and partners other than Joseph Nolan. All of the 1476 hours recorded by Mr. Nolan were not supported by specific time records. However, other records were maintained and they have been marked as exhibits in this hearing."

19. That Joseph M. Nolan, Esq., his partners and associates performed substantial services benefiting the Debtors' estate, the magnitude and complexity of which is outlined in part by the testimony in the exhibits introduced into evidence (Exhibits A18 through A45).

20. That Joseph M. Nolan, his partners and associates performed professional services, the magnitude and complexity of which are outlined in the exhibits filed with this Court. The exhibits introduced into evidence and reviewed, namely: Tucson, Arizona; Decatur, Illinois; East St. Louis, Illinois; Las Vegas, Nevada; Modesto, California; Rapid City, South Dakota; Walla Walla, Washington; Los Angeles, California; Indio, California; Long Beach Downtown, California; Long Beach Pacific, California; Longview, Texas, give only an indication of a small part of the work performed by the Petitioner and his law firm. A review of these files reveals only in part the complexity of these reorganization proceedings and the testimony does not analyze or include within it the vast amounts of correspondence handled by the office of Joseph M. Nolan, Esq. in his capacity as attorney to the Trustee and General Counsel to the Debtor Corporations.

21. That Joseph M. Nolan, Esq.'s services to the Debtor estate are outlined and verified by an analysis of a substantial portion of the pleadings and legal documents introduced into evidence and by a review of the Docket in the District Court and in the Bankruptcy Court, which is annexed to the Petition filed and is contained in Exhibit "A1".

22. That Joseph M. Nolan, Esq. spent the greater part of the period for which he seeks compensation at the offices of the Debtor Corporation in Englewood Cliffs, New Jersey and at meetings, conferences, Court hearings, all relating to the administration of this estate.

23. That Joseph M. Nolan, Esq. has, during the period involved, attended to the substantial duties involved as attorney to the Trustee and as General Counsel to the Debtor Corporation which operates in thirty-eight (38) states of the country.

24. That during these reorganization proceedings the Debtors' gross income and net profit have dramatically risen as demonstrated by the following:

| Year | Gross Income Chain | Net Profit (Loss) Chain | Profit Distribution | Net Profit (Loss) Debtor Corp. Share *** | % Increase Net Profit Over Previous Year |
|---|---|---|---|---|---|
| 1965 (11 mos.) | $9,642,969. | ($456,515.) | $344,060.16 | $2,194,593. | — |
| Jan. & Feb. 1966 | (E. Walsh) | | $ 10,308.86 | | |
| 1966 (Appt. 2/21/66) | $10,564,397. | ($246,758.07) | $319,442.59 | ($ 163,323.) | — |
| 1967 | $11,216,906. | ($148,105.00) | $387,345.97 | $ 71,821. | 144% |
| 1968 | $12,098,979. | $436,949. | $592,663.08 | $ 201,176. | 180% |
| 1969 | $12,669,622. | $1,038,124. | $813,590.41 | $ 671,941. | 234% |
| 1970 | $12,280,400. | $1,200,000.* | $1,064,438.13 | $ 800,000.** | 20% |

  * estimated
  ** 590% increase in net income over 1966 and projected to year's end.
  *** Before Taxes

25. That Joseph M. Nolan, Esq. and his law firm are suffering severe economic hardship and a fourth interim allowance is necessary to relieve that hardship.

26. That there is on deposit approximately $892,000.00 in the Trustee's account and the requested interim allowance will not deplete necessary working capital or jeopardize the continued efficient operation of the Debtors' business.

27. That Joseph M. Nolan, Esq., as a senior partner in the firm of Nolan and Lynes, is the main source of new business for the firm and is responsible for its development in the future, that his constant attention to the Debtors' affairs has been at the expense of the advancement of his own law firm in terms of client development, attending to existing clientele and overall office control.

28. That the disbursement schedule attached to the Petition is correct, that all disbursements were properly made and that the $25.00 a day traveling expense allowance authorized by the District Court does not cover the actual expenses incurred by the Petitioner.

29. That the SEC examined the time sheets and other time records of Joseph M. Nolan, Esq., his partners and associates and stated that records were contemporaneously kept with the work performed and recommended that the fee of $75,000.00 was reasonable.

30. That the recommendation of the SEC was as follows:

"Our recommendation is taking into consideration the following facts: The evidence introduced at this hearing and at the hearing held before Judge Shaw on May 10; the time expended; the difficulty of the problems encountered; the results achieved; the size of the estate; the demonstration of economic hardship. And that the hourly rate sought herein, approximately $25, which is consistent with the indicated hourly rate $23, which was allowed as a maximum by the Third Circuit—taking all of these factors into consideration, we have no objection to the amount requested for Fourth Interim Allowance.

"As to the $4,428.92 sought for disbursements, our reviews showed no irregularity except as to the 25 cents per page for Xeroxing 12,405 pages. Counsel's admitted cost is approximately half that amount, and, accordingly, one half or $1,552.62 should be denied."

### RECOMMENDATIONS

31. That the requested fourth interim allowance made by Joseph M. Nolan, Esq. in the amount of $75,000.00 be allowed.

32. That out of pocket disbursements be allowed in the amount of $3,808.67, a reduction of $620.25. This reduction is made by recommending a charge of 20 cents a copy for Xeroxing instead of the 25 cents a copy requested by the Petitioner.

Respectfully submitted,
(s) Vincent J. Commisa

VINCENT J. COMMISA
Referee in Bankruptcy
Special Master by Appointment in Accordance with
Order Dated May 26, 1971