Joseph M. NOLAN, Plaintiff,

v.

The JUDICIAL COUNCIL OF the THIRD CIRCUIT, Defendant.

Civ. No. 769–72.

United States District Court,
D. New Jersey.

July 29, 1972.

---

Martin L. Haines, Dimon, Haines & Bunting, Mt. Holly, N. J., for plaintiff.

Stuart E. Schiffer, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Acting Asst. Atty. Gen., and Harland F. Leathers, Atty., Washington, D. C., on brief), for defendant.

THOMSEN, District Judge.*

Plaintiff challenges on various grounds the validity of the following resolution adopted by the Judicial Council of the Third Circuit on February 10 and reaffirmed on April 12, 1972:

> "RESOLVED that in all bankruptcy proceedings this Council holds as incompatible the continued representation as attorney for the trustee by any lawyer or his firm who represents a third party who submits a plan for reorganization in the bankruptcy; and that the recusal by the attorney only from commenting on proposed reorganization plans is not an adequate immunization from the appearance of a conflict of interest."

The resolution was adopted with the immediate objective of causing the resignation or removal of plaintiff as attorney for the trustee in a Chapter X reorganization proceeding in this court.

The late Judge Robert Shaw had been handling the bankruptcy proceeding and had been communicating with Chief Judge Seitz of the Court of Appeals for the Third Circuit with respect thereto. Chief Judge Seitz sent Judge Shaw a copy of the resolution, which Judge Shaw showed to plaintiff and gave him an opportunity to resign. Plaintiff refused, and filed the original complaint in the instant case on May 2, seeking relief by way of declaratory judgment, injunction, mandamus, or prohibition against enforcement of the resolution. Later that day Judge Shaw entered an order terminating the services of plaintiff as attorney for the trustee, without any formal notice or hearing, because Judge Shaw considered the resolution to be an order which he was bound to "carry into effect". 28 U.S.C.A. § 332(d).

After Judge Shaw had entered and later vacated a stay of his May 2 order, plaintiff filed an amended complaint herein, adding a fifth count in which he

---

* Of the District of Maryland, sitting by designation.

alleged the entry of the May 2 order and sought judgment: (1, 2) declaring the acts and the resolution of the Council to be in excess of its statutory and constitutional authority; (3) enjoining the Council from causing to be enforced the order of the District Court discharging him as attorney for the trustee; or alternatively, (4) "should the Court find that the Judicial Council has the power to make rules relating specifically to pending litigation, then plaintiff seeks a determination that Section 332 of Title 28 of the United States Code is unconstitutional to the extent that said statute delegates such powers to the Judicial Council, without providing for the definite standards required by the Constitution or the rudimentary requirements of due process." Plaintiff also requested that a three-judge district court be impanelled.

On May 24 plaintiff filed in the Supreme Court a motion for leave to file a petition for writ of prohibition and/or mandamus and a petition for writ of prohibition and/or mandamus, raising similar questions.

On May 31 plaintiff entered an appeal to the Court of Appeals for the Third Circuit from the May 2 order of Judge Shaw terminating plaintiff's services as attorney for the trustee.

On June 9 the Chief Justice of the United States designated me to hold a district court in the District of New Jersey to handle the instant case.

The Judicial Council, represented by attorneys in the Department of Justice, has moved to dismiss the action in this court for lack of jurisdiction to grant the relief prayed and because the complaint does not state a claim on which relief can be granted, or, in the alternative, for summary judgment. The Judicial Council attached several exhibits to its motion, which will be treated as a motion for summary judgment.

At a hearing on the jurisdiction of this court to grant any of the relief sought by plaintiff, the parties stipulated that the following material may be considered a part of the record in this case so far as the several items or any portions thereof may be relevant to any issue herein: (1) the present record on the motion and petition filed by plaintiff in the Supreme Court;[1] (2) a report of the Securities and Exchange Commission;[2] (3) a letter from the attorney for the Judicial Council, stating that the Council does not operate under any formal rules, and that no material which is not currently in the record of this action was before the Council when it discussed and dealt with the matter at issue in this case; (4) the entire record in the Court of Appeals for the Third Circuit on the appeals numbered 18804–18809 and 71–1550–71–1556,[3] insofar as said records or any part thereof may be relevant and material to any issue in the instant case or in the appeal which has been taken to the Court of Appeals for the Third Circuit from the May 2 order of Judge Shaw in the bankruptcy proceedings.[4]

Plaintiff also filed at that hearing a set of 56 interrogatories to the defendant Council. The attorney for the Council asked for a protective order under Rule 26(c), F.R.Civ.P., that no discovery

1. No. 71–1531, October Term 1971, in the Supreme Court of the United States, entitled Joseph M. Nolan, Petitioner v. The Judicial Council of the Third Circuit of the United States, et al., Respondents, 406 U.S. 956, 92 S.Ct. 2063, 32 L.Ed.2d 342.

2. The SEC report, dated July 12, 1972, is entitled "Advisory Report of the Securities and Exchange Commission on Proposed Plans of Reorganization, filed in The Matter of Imperial '400' National, Inc., et al., Debtors, No. 656–65 in this court."

3. In both of those appeals the opinions filed by the Court of Appeals were entitled In Re Imperial "400" National, Inc., et al. They are reported in 429 F.2d 671 (1970) and 432 F.2d 232 (1970).

4. It was agreed that the parties hereto do not concede the truth of any of the allegations made in the applications, briefs, letters or other material contained in said records.

be had or that discovery be stayed for 30 days after the ruling on the question of the jurisdiction of this court to grant any relief herein. In view of the stipulation summarized above, the interrogatories are not necessary to develop the facts relevant and material to the question of jurisdiction; no answers or objections thereto need be filed unless and until ordered by this court.

Plaintiff has filed an affidavit, setting forth certain facts which he wishes the court to consider on the question of jurisdiction raised by defendant's motion. It has been considered, along with the other material submitted by the parties, from all of which the following facts appear.

### I

On June 3, 1965, Imperial "400" National, Inc. (Imperial), a chain of motels, filed a petition in this court for an arrangement under Chapter XI of the Bankruptcy Act; the petition was later amended to comply with Chapter X. Thomas J. O'Neill, Esq., was appointed trustee for Imperial on February 21, 1966, and three days later plaintiff was appointed attorney for the trustee.

Some of the problems in the reorganization proceeding are discussed in two Third Circuit opinions, both titled "In re Imperial '400' National, Inc.", and reported in 429 F.2d 671 (1970) and 432 F.2d 232 (1970), respectively. The Third Circuit was impressed, as was Judge Shaw, with the apparent success of the reorganization, 432 F.2d at 237, 242, but felt that the cost of administration had been great, and reduced the interim fees to the trustee and to plaintiff. Id. at 238, 240 et seq. The Third Circuit stated that approval of a plan of reorganization was "not immediately

foreseen", that the trustee had submitted no plan of his own, and that he and his attorney had opposed prompt consideration of plans submitted by various creditors.[5] Id. at 238, n. 15. "We suggest that the trustee and his counsel make a greater effort to work with the creditors and other interested parties in an effort to terminate this lengthy reorganization proceeding with dispatch." Id. at 240.

In April 1971 plaintiff advised Judge Shaw that Schiavone Construction Co., Inc., a client of plaintiff's law firm, was interested in exploring the possibilities of filing a plan of reorganization in the Chapter X proceeding; that his firm had represented Schiavone for some years; that he had arranged an initial meeting between officers of Schiavone and counsel for the creditors' committee; that he had attended that meeting, a subsequent meeting with the attorney for the creditors' committee and a meeting with the co-owners' committee and their attorney; that Schiavone had been furnished all the financial information it had requested, which was of the same nature as that previously furnished to all other proponents; and that Schiavone would like to enter into serious negotiations with the trustee, the creditors' committee and the co-owners' committee.

Judge Shaw suggested that plaintiff refrain from further participation in any such negotiations and that the trustee himself handle this phase of the Chapter X proceeding. Schiavone was represented in the negotiations by a firm other than plaintiff's law firm. Plaintiff asked Judge Shaw to review the matter and suggested that Judge Shaw call a hearing at which any interested party might voice objections on

5. Plaintiff has filed an affidavit herein disputing some of the factual statements made in these opinions and in a later opinion of the Third Circuit as being based upon allegations of attorneys which are not accurate. Plaintiff likewise disputes for the same reason some of the statements later made to the Judicial Council by members of the panels, and argues that he should have been given an opportunity to answer those statements before the Judicial Council acted. This dispute is not material to the issue of this court's jurisdiction in this case, although it may be material on the merits of some of the problems raised herein and in other proceedings.

the record to any procedure decided upon by the court.

On April 21, 1971, Judge Shaw wrote a letter to the trustee and to plaintiff, sending copies to counsel for all interested parties, summarizing his conference with plaintiff and stating:

"If a good plan of reorganization which is more fair, equitable and feasible than any heretofore submitted may be available by participation of Schiavone Construction Co., I do not think stockholders, creditors and other parties in interest should be deprived of the benefit of such plan by reason of the fact that Mr. Nolan represents that corporation in other matters.
\* \* \*

"Since the Trustee, Mr. O'Neill, is a competent and well qualified attorney and has no conflict of interest with respect to Schiavone Construction Co., I direct that Mr. O'Neill handle all negotiations and offer all assistance in the preparation of the proposed plan that it is appropriate to offer and in keeping with what has been done with respect to other proponents and that Mr. Nolan refrain completely from any participation therein.
" \* \* \*

"If it is felt by any interested party that this is not the appropriate way to proceed to gain the financing of Schiavone Construction Co., the Court will entertain and consider objections which, if any, should be promptly presented."

No objection to this arrangement was raised by any interested party. Judge Shaw received letters from the SEC and from Lawrence W. Levine, Esq., counsel for Union Bank of Los Angeles, agreeing with Judge Shaw's approach, but recommending that plaintiff not be allowed to participate in any plan of reorganization. Shortly thereafter, Judge Shaw directed plaintiff not to participate in any plan of reorganization.

On June 30, 1971, Schiavone filed a proposed plan of reorganization.

Meanwhile, a dispute had arisen with respect to interest on the amounts which the Third Circuit had required the trustee and plaintiff to return to the debtors' estate.[6] An appeal from Judge Shaw's ruling on this matter was heard on January 27, 1972, by a panel composed of Judges McLaughlin, Van Dusen and Adams. On January 31, 1972, Judges Van Dusen and Adams, who had also been members of the panels which had decided the previous appeals, cited above, wrote a letter to Chief Judge Seitz of the Third Circuit, in which they stated:

"After reviewing the voluminous number of applications in the above case which were filed since last summer and deferred at your direction for consideration by the panel hearing the merits of the appeals, as well as the briefs filed on the merits, and considering the oral argument last Thursday, we write to express our concern on those two points:

"A. The importance of prompt determination of which is the best available plan of reorganization.
" \* \* \*

"B. We believe that appearance of impropriety to laymen and the friction between counsel for the trustee (Mr. Nolan) and various of the creditors is such that you should at least suggest to the assigned district judge or Chief Judge Augelli that such counsel should withdraw as counsel for the trustee.

"Even though counsel for the trustee has disqualified himself from acting on the plans, he continues to advise the trustee on a regular basis in

---

6. By its decision reported in 432 F.2d 232, 240. The opinion of the Third Circuit on the question of interest was filed March 15, 1972, 456 F.2d 926. Other opinions dealing with the reorganization are reported: 391 F.2d 163; 429 F.2d 671; 429 F.2d 680; 274 F.Supp. 342; 274 F.Supp. 351; 324 F.Supp. 582; 333 F.Supp. 742.

other matters and the trustee is favoring the last plan filed, submitted by one of the best clients (Schiavone Co.) of his counsel's law firm, even though a plan favored by many of the creditors had been submitted many months before the Schiavone plan and gives them cash, which is what they want. We believe that the public will not understand how the court permits Mr. Nolan to act as counsel for the trustee in any matters under these circumstances, particularly in view of the litigation over fees and interest on such fees involved in the various appeals to this court. The fact that Schiavone Co. has New York counsel to represent them on the plan will not overcome, in the minds of laymen, the continuing representation of this company in all other matters by the Nolan & Lynnes firm.

" * * *"

Footnote 5, above, applies to the statements in this letter.

A meeting of the Judicial Council of the Third Circuit to consider the matter was convened on February 10. The minutes of that meeting are set out in full as Appendix A to this opinion. The Council discussed problems growing out of the reorganization of Imperial, a letter Chief Judge Seitz had received from Judge Shaw, and the letter from Judges Van Dusen and Adams. The Council unanimously adopted the resolution set out in the first paragraph of this opinion. On March 10 Chief Judge Seitz wrote Judge Shaw a letter, the material parts of which are set out as Appendix B, summarizing the discussion at the meeting of the Judicial Council on February 10, paraphrasing the resolution and suggesting that the matter be called to plaintiff's attention and that he be given the opportunity to resign.

On March 22 Judge Shaw wrote a long letter to Chief Judge Seitz, stating that plaintiff "does not think he should respond to a request for a resignation because no matter how it may be handled, it would still be a resignation under pressure and a tacit confession of wrongdoing". Judge Shaw reviewed the material he had previously sent to the Third Circuit, which showed that the SEC and Levine, whom Judge Shaw referred to as "the sole and leading critic of the conduct of the trustee and the counsel of the trustee", had approved the action Judge Shaw had taken in April 1971. He added: "Anticipating the possibility of an order of the Court discharging him, Mr. Nolan insists that if there were to be any such removal for cause, he is entitled to an evidentiary hearing." Judge Shaw summarized Nolan's background, his position in and services to the community, and stated:

> "It is my opinion that with an unblemished career behind him, he has a right to a hearing which will afford him the opportunity to dispel any cloud which would be cast upon his reputation by resignation submitted under pressure. Frankly, I think fundamental fairness demands this course of action if he is to be removed from his office as Counsel to the Trustee."

After discussing recent developments in the Chapter X proceeding, Judge Shaw referred to the statutory authority, 11 U.S.C.A. § 11(a) (17), providing for removal for cause of receivers or trustees "upon hearing after notice". Judge Shaw added:

> " * * * It seems to me that while Mr. Nolan may not fall within the classification above mentioned, it is nevertheless, my opinion that the spirit of the Act and fundamental fairness dictate that he is entitled to a hearing upon notice before he can be removed for cause. Despite the fact that it may not have been the intent of Congress that the above cited statutory provision would be applicable to counsel for a trustee, nevertheless, a removal by order of the court is in the nature of disciplinary action against an officer of the court. In this area I believe it has been generally recognized that before disciplinary action is taken against an officer of the court, he is entitled to a hearing upon notice. If this aspect of the matter were left

in my hands, I would be inclined to disqualify myself from presiding at such hearing because I have very strong feelings in the matter. It is my opinion that it would be preferable to disqualify myself and bring this to the attention of Chief Judge Augelli so that he could appoint another district judge to preside who has had no participation in this bankruptcy."

On April 12, 1972, a meeting of the Judicial Council of the Third Circuit was held, the minutes of which contain the following relevant material:

"Chief Judge Seitz then presented for consideration the Imperial '400' bankruptcy matter which had been the subject of discussion at prior meetings. Judge Hunter asked to be excused from consideration of this item because of his personal relationship with Attorney Nolan, counsel for the Trustee. The issue as indicated by Chief Judge Seitz was what action should be taken by the Council, if any, with respect to the most recent correspondence from Judge Shaw pertaining to the resignation of the Attorney for the Trustee. It was moved by Judge Aldisert, and seconded by Judge Adams that Chief Judge Seitz be requested to reply to Judge Shaw and advise him that the Council, having considered the correspondence brought to its attention by him between Judge Shaw and the creditors, reaffirmed its resolution adopted at the previous meeting in which it was emphasized that the Council is concerned with the appearance rather than the actual conflict of interest. We request, therefore, that he give the resolution appropriate consideration. The motion was carried unanimously."

On April 14 Chief Judge Seitz wrote Judge Shaw as follows:

"Re: Imperial '400'

"Dear Judge Shaw:

"I referred your letter of March 22, 1972 to the Circuit Council for instructions.

"First, the judges desire to emphasize the importance of maintaining the distinction between this court and the Judicial Council. As to the proposal to file another reorganization plan, we are clear that it is for you to decide whether another plan should be entertained. We can say no more because the propriety of your decision may come before us in our appellate capacity. We do say that whatever is done should be done promptly.

"Second, the Council considered your remarks concerning the possible severance of Mr. Nolan's services as attorney for the trustee.

"The Council has directed me to quote its resolution which is intended to apply to the entire Circuit:

" 'RESOLVED that in all bankruptcy proceedings this Council holds as incompatible the continued representation as attorney for the trustee by any lawyer or his firm who represents a third party who submits a plan for reorganization in the bankruptcy; and that the refusal by the attorney only from commenting on proposed reorganization plans is not an adequate immunization from the appearance of a conflict of interest.'

"The Council desires to emphasize that its resolution is directed at the *appearance* of a conflict of interest. Consequently, it does not view Mr. Nolan's case as presenting any issue of removal 'for cause' in the sense of any alleged personal wrongdoing. Thus, we do not consider that the implementation of the resolution involves disciplinary action which would call for a hearing at which Mr. Nolan would be expected to defend himself. We are talking policy. I might add that we do not intend to imply by these remarks that counsel for the trustee can be removed only for cause.

"You, of course, must decide whether you want to disqualify yourself in connection with this matter. But, again, whatever is done should be done promptly.

"If this matter is unclear, please feel free to write me. The Council would appreciate an early report on the second matter noted herein.

"Sincerely,

"Collins J. Seitz"

A copy of the quoted resolution was sent to the chief judges of all of the district courts in the Third Circuit.

Judge Shaw discussed the matter with plaintiff and indicated that he was in a quandary as to what he should do.

On May 2 plaintiff filed the instant action in this court. Later that day, Judge Shaw signed an order terminating the services of plaintiff as attorney for the trustee in the reorganization proceeding. Judge Shaw quoted the resolution of the Judicial Council and stated: "The above cited resolution mandates termination of the services of Joseph M. Nolan, Esq., as counsel for the Trustee and it is the duty of this Court to enforce the same."

On May 5 Judge Shaw granted plaintiff an interim stay of the May 2 order pending a hearing on May 11, and ordered all interested parties to show cause why plaintiff's petition for a stay should not be granted. Following the hearing on May 11, Judge Shaw orally advised plaintiff that the stay would have to be vacated because the resolution of the Judicial Council would have to be given effect. Judge Shaw filed a memorandum reviewing the existing situation in the bankruptcy proceeding and concluding: " * * * this Court would urge, in the interest of the estate, that the issue of whether or not Mr. Nolan should be restored to his position as counsel to the Trustee be resolved as expeditiously as possible in order to minimize additional expense and avoid delay in bringing this matter out of the Chapter X proceedings. * * *"

Judge Shaw's order vacating the stay was filed on May 12, and on the same day plaintiff filed with the United States Court of Appeals for the Third Circuit a motion for a continuance of Judge Shaw's order of May 5, granting a stay.

On May 15 a panel of the Third Circuit (Senior Judges Biggs, Maris and Hastie) denied plaintiff's motion for a continuance of the stay and set the case for hearing on June 19.

On May 24 plaintiff filed in the Supreme Court a motion for leave to file a petition for writ of prohibition and/or mandamus and a petition for writ of prohibition and/or mandamus. He also applied for a stay of the order which Judge Shaw had entered vacating the stay which he had granted on May 5. The application for a stay was denied by the Supreme Court on May 29, 406 U.S. 956, 92 S.Ct. 2063, 32 L.Ed.2d 342.

On May 31 plaintiff appealed to the Court of Appeals for the Third Circuit from the May 2 order of Judge Shaw terminating plaintiff's services as attorney for the trustee.

On June 20, after hearing argument on June 19, the Court of Appeals for the Third Circuit (Senior Judges Biggs, Maris and Hastie) affirmed Judge Shaw's order of May 12 vacating the stay entered on May 5.

On June 29 plaintiff filed a motion in the Court of Appeals for the Third Circuit to disqualify the judges of that court from hearing the appeal pending therein. On July 5 plaintiff supplemented that motion by calling attention to the fact that Judge Hastie was among those attending the February 10 meeting of the Judicial Council. On July 5 the Court of Appeals granted a stay of the proceedings on appeal pending the decision in the instant case and in the Supreme Court proceedings.

II

The judicial councils of the several circuits were created by 28 U.S.C. § 332.[7] The legislative history of that

7. "§ 332. *Judicial councils*

"(a) The chief judge of each circuit shall call, at least twice in each year and at such places as he may designate, a council of the circuit judges for the circuit, in regular active service, at which

statute is discussed in several opinions in Chandler v. Judicial Council of the Tenth Circuit, 398 U.S. 74 (1970), particularly in the concurring opinion of Justice Harlan, id. at 89 et seq., 90 S.Ct. 1648, 26 L.Ed.2d 100.

The responsibilities and powers of the judicial councils are discussed at length in a report of a special committee of the Judicial Conference of the United States, adopted by the Judicial Conference at its meeting in March 1961.[8] The conclusions of the special committee, adopted by the Conference, read as follows:

"(1) Under section 332, the judicial councils are intended to have, and have, the responsibility of attempting to see that the business of each of the courts within the circuit is effectively and expeditiously administered.

"(2) The responsibility of the councils 'for the effective and expeditious administration of the business of the courts within its circuit' extends not merely to the business of the courts in its technical sense (judicial administration), such as the handling and dispatching of cases, but also to the business of the judiciary in its institutional sense (administration of justice), such as the avoiding of any stigma, disrepute, or other element of loss of public esteem and confidence in respect to the court system, from the actions of a judge or other person attached to the courts.

"(3) The councils have the responsibility and owe the duty of taking such action as may be necessary, including the issuance of 'all necessary orders,' to attempt to accomplish these ends.

"(4) These responsibilities should ordinarily be approached, in the spirit and tradition of the judicial institution, in an attitude of attempted cooperation and assistance to the district courts and not of purported policemanship, since the purpose of the statute is to make the Council an instrument to help prevent problems from arising, to help find solutions for those which have arisen, as well as to take such corrective action for prevention or solution 'as may be necessary.'

"(5) If the councils are effectively to serve these purposes, it is manifest that they must undertake to keep themselves informed. Their primary source of information will, of course, be the reports of the Director of the Administrative Office, as referred to in the statute. But formal statistics alone will not always, and perhaps not usually, be sufficient as a basis for the exercise of intelligent responsibility. Statistics may point out the existence of a problem, but they do not ordinarily demonstrate the causes or reasons underlying the problem. Thus, in the attempt to deal with a problem, such as where a court appears to be falling behind and perhaps to be approaching an incipient congestion, it would seem desirable for the Council to call upon the Administrative Office to undertake to make an exploration into the particular situation, in order to enable it to get at the underlying picture and understand

---

he shall preside. Each circuit judge, unless excused by the chief judge, shall attend all sessions of the council.

"(b) The council shall be known as the Judicial Council of the circuit.

"(c) The chief judge shall submit to the council the quarterly reports of the Director of the Administrative Office of the United States Courts. The council shall take such action thereon as may be necessary.

"(d) Each judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit. The district judges shall promptly carry into effect all orders of the judicial council.

" * * * "

8. House Document No. 201, 87th Congress, 1st Session, cited by Justice Harlan, 398 U.S. at 102, 90 S.Ct. 1648; see also Reports of the Proceedings of the Judicial Conference of the United States, March and September meetings, 1961, pp. 51–53.

what it is that needs suggestion or corrective action on the part of the Council.

"(6) In the judgment of the Judicial Conference the present statute is adequate to enable the judicial councils, on proper exercise of their responsibilities, to serve their intended purpose, as an instrumentality in the statutory scheme of Public Law No. 299, for 'The Administration of the U. S. Courts,' to assist in achieving 'the effective and expeditious administration of the business of the courts.' The expression which the Conference made in the report of its September 1939 session, page 11, after the enactment of the act, is entitled to be renewed:

"It is confidently expected that through the operation of this act the important objectives to which reference has been made will be measurably attained."

### III

A. (1) Plaintiff argues that 28 U.S.C. § 332, which created the judicial councils of the several circuits and specified their duties and powers, does not authorize the adoption of the resolution involved in this case nor the direct participation of a council in a pending judicial proceeding; that the councils were intended by Congress to be administrative bodies functioning in a very limited area in a narrow sense as "boards of directors" for the several circuits;[9] that the Judicial Council for the Third Circuit attempted by its resolution to add a fifth subparagraph to 11 U.S.C. § 558,[10] which provides certain tests for determining whether a person is "a disinterested person" for the purposes of §§ 556 and 557, which deal with the appointment of trustees and attorneys for trustees; and, therefore, that the adoption of the resolution in question was an unconstitutional act, in excess of the legislative authority given to the councils.

(2) Plaintiff further argues that Congress did not intend to vest traditional judicial powers in the councils; that if the resolution adopted by the Judicial Council for the Third Circuit be deemed an interpretation of 11 U.S.C. § 558, the Council would have been functioning in a judicial manner and not in an administrative manner, and therefore would have been acting in excess of the authority granted to the Council by 28 U.S.C. § 332.

(3) Plaintiff also argues that if 28 U.S.C. § 332 attempts to delegate to the judicial councils the power to make rules specifically applicable to pending litigation, the statute is unconstitutional because: (i) § 332 does not provide definitive standards to be applied by the judicial councils in the exercise of such delegated power; (ii) Congress cannot delegate to the judicial councils the power to regulate judicial proceedings; and (iii) § 332 does not require adherence to rudimentary requirements of due process by the councils in the exercise of their administrative functions.

(4) Plaintiff argues that the resolution ignores (i) 28 U.S.C. § 2075, which

---

9. Chandler v. Judicial Council, *supra*, at p. 86, n. 7, 90 S.Ct. 1648.

10. 11 U.S.C. § 558 provides:
"A person shall not be deemed disinterested, for the purposes of sections 556 and 557 of this title, if—
"(1) he is a creditor or stockholder of the debtor; or
"(2) he is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the date of the filing of the petition was the underwriter of any securities of the debtor; or

"(3) he is, or was within two years prior to the date of the filing of the petition, a director, officer, or employee of the debtor or any such underwriter, or an attorney for the debtor or such underwriter; or
"(4) it appears that he has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such underwriter, or for any reason an interest materially adverse to the interests of any class of creditors or stockholders."

grants to the Supreme Court the power to prescribe by General Rules the practices and procedures under the Bankruptcy Act, and (ii) the applicable General Orders in Bankruptcy adopted pursuant to that statute [11] (there is no statute or rule granting similar powers to the several courts of appeals or judicial councils); and that, in view of the statutes and General Orders referred to above, it is improper for a judicial council to interfere with a bankruptcy court's jurisdiction over the appointment of attorneys for trustees.

B. Defendant Judicial Council takes the position, assuming arguendo this court has jurisdiction to review the validity of the resolution and its application to plaintiff—

(i) that this court is not free to substitute its judgment for that of the Council, but can only determine whether there is any rational basis for the resolution;

(ii) that the resolution was within the power and duty of the Council to make all necessary orders for the *effective* as well as the *expeditious* administration of the business of the courts within its circuit, 28 U.S.C. § 332(d); and that the responsibility of the Council extends not "merely to the business of the courts in its technical sense (judicial administration), such as the handling and dispatching of cases, but also to the business of the judiciary in its institutional sense (administration of justice), such as the avoiding of any stigma, disrepute, or other element of loss of public esteem and confidence in respect to the court system, from the actions of a judge or other person attached to the courts", as

11. General Order 44 provides:

"*Appointment of Attorneys*

"No attorney for a receiver, trustee or debtor in possession shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver, trustee or debtor in possession, stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other party in interest, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, the trustee, or the estate in the matters upon which he is to be engaged, and that his employment would be to the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee or debtor in possession shall have represented any interest adverse to the receiver, trustee, creditors or stockholders in any matter upon which he is employed for such receiver, trustee, or debtor in possession, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney.

"Nothing herein contained shall prevent the judge, in proceedings under section 77 of the Act, from authorizing the employment of attorneys who are attorneys of the corporation, or associated with its legal department, in connection with the operation of the business of the corporation by a trustee or trustees under subsection (c) of section 77, when such employment is found by the judge to be in the public interest in relation to such operation and is not adverse to the interests of the trustee or trustees or of the creditors of the corporation."

General Order 56 provides:

"*Rules by Courts of Bankruptcy*

"Each court of bankruptcy, by action of a majority of the judges thereof, may from time to time make and amend rules governing its practice in proceedings under the Act not inconsistent with the Act or with these general orders. Copies of rules and amendments so made by any court of bankruptcy shall, upon their promulgation, be distributed by the clerk of the district court as follows: Two copies to the Library of the Supreme Court of the United States, Washington 25, D.C.; two copies to the Director of Libraries, Department of Justice, Washington 25, D.C.; two copies to the Comptroller General, General Accounting Office, Washington 25, D.C.; and four copies to the Administrative Office of the United States Courts, Washington 25, D.C."

stated in the second conclusion of the Report adopted by the Judicial Conference of the United States in March 1961. See n. 8, above, and accompanying text.

(iii) that the integrity of the bankruptcy system and the sound functioning of the bankruptcy courts is a proper concern of judicial councils; that a trustee in bankruptcy and the attorney for a trustee are statutory officers of the bankruptcy court;[12] and that 11 U.S.C. § 558, cited by plaintiff, does not establish an exclusive standard for determining the disinterestedness of a trustee or his attorney.[13]

## IV

A. The Judicial Council contends, however, that this court has no jurisdiction to grant any of the relief requested in this case. It argues—

(i) that the mere adoption of the resolution and its transmission to Judge Shaw and to the chief judges of the district courts in the circuit did not give rise to a justiciable case or controversy; that no justiciable case or controversy existed until Judge Shaw gave effect to the resolution; and that the original complaint herein was premature and was not a proper method of challenging the resolution, citing Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), and other cases;

(ii) that the May 2 order of Judge Shaw gave effect to the resolution and created a justiciable controversy, which plaintiff seeks to have resolved in his favor by means of his amended complaint filed herein on May 19;

(iii) that the May 2 order is res judicata of the issues raised by the amended complaint, which carried forward the issues raised by the original complaint;

(iv) that plaintiff has a plain, adequate and exclusive remedy to challenge the resolution by direct appeal to the Court of Appeals for the Third Circuit from the May 2 order; and that plaintiff has filed such an appeal. Plaintiff contends that the appeal to the Court of Appeals will be futile, because the members of the Judicial Council are the active judges of the Court of Appeals.[14] Defendant replies that "if the members of the Judicial Council should disqualify themselves from hearing plaintiff's appeal from the May 2 order, a panel consisting of either the senior judges of the Third Circuit[15] —not members of the Judicial Council—or judges from other circuits could be designated to hear the appeal. See 28 U.S.C. 291, 294."

B. (1) Plaintiff claims federal question jurisdiction under 28 U.S.C. § 1331, and seeks declaratory relief under 28 U.S.C. § 2001. He also argues:

(2) That the acts and resolutions of the Judicial Council of the Third Circuit are administrative in nature and subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.;

(3) That the resolution of the Judicial Council attempts to usurp the jurisdiction of this district court, and, therefore, this court has the power to issue a writ of mandamus or of prohibition in aid of its jurisdiction, citing 28 U.S.C. § 1651;

(4) That the acts of the Judicial Council are in violation and in excess of the powers of the Judicial Council, and that this court has "jurisdiction in the

---

12. Citing 11 U.S.C. §§ 556, 567(4), and In re Town Crier Bottling Co., 123 F. Supp. 588, 592 (E.D.Mo.1954).

13. Citing 6 Collier on Bankruptcy 14th Edition, ¶ 7.08 [1].

14. Circuit Judges Gibbons and Hunter did not participate in the adoption of the resolution, and will presumably not participate in any appeal for the same reasons. Senior Judge Hastie attended the meet-

ing of the Judicial Council at which the resolution was adopted. Since Judge Hastie is not a member of the Council, this court presumes that he did not vote on the adoption of the resolution.

15. The panel which heard plaintiff's appeal from Judge Shaw's May 12 order, vacating the stay given on May 5, consisted of three Senior Judges, namely, Judges Biggs, Maris and Hastie.

nature of mandamus" under 28 U.S.C. § 1361 "to prohibit the said Judicial Council from acting in excess of its authority." [16]

## V

**A.** This court concludes that the appeal which plaintiff has taken from Judge Shaw's May 2 order affords him an adequate remedy.[17] Judge Shaw believed that 28 U.S.C. § 332(d) required him to give effect to the resolution. The Judicial Council also takes that position. Plaintiff disagrees. But whether or not Judge Shaw was required to give effect to the resolution, his May 2 order was within the authority of the bankruptcy court. 11 U.S.C. §§ 577, 558, and General Order 44, and is subject to review by the Court of Appeals for the Third Circuit. 11 U.S.C. § 47.

**B.** This action does present a question of federal law, and it appears that plaintiff may well lose at least $10,000 in fees as a result of the termination of his services as attorney for the trustee. But in view of Judge Shaw's May 2 order, and plaintiff's right to appeal therefrom, which he has in fact exercised, it would be inappropriate for a judge of co-ordinate jurisdiction, sitting in the same district court, to interfere with the orderly procedure provided by the Bankruptcy Act. A declaratory judgment action cannot be used as a substitute for an appeal. Chicago Pneumatic Tool Co. v. Hughes Tool Co., 61 F.Supp. 767, 770 (D.Del.1945), aff'd per curiam, 156 F.2d 981 (3 Cir. 1946), cert. den. 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed.

670 (1946). Nor should a judge sitting in the same district court review in such a suit as this the decision of Judge Shaw in the Chapter X proceeding that he was bound to give effect to the resolution. That decision is res judicata for the purposes of the instant suit, unless and until it is reversed or modified on appeal. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Katchen v. Landy, 382 U.S. 323, 324, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Cf. In re Hines, 88 F.2d 423, 425 (2 Cir. 1937); Price v. Greenway, 167 F.2d 196 (3 Cir. 1948).

**C.** The resolution of the Judicial Council is not subject to review by this court in this proceeding under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Whether or not a proceeding for review of the resolution in question may be available in the Supreme Court, and whether or not review may be available in other courts in other circumstances, the fact that Judge Shaw considered the resolution and acted upon it in issuing his May 2 order, from which an appeal has been taken, makes it clearly improper for this court to undertake such a review under the A.P.A.

**D.** Nor can plaintiff properly base his claim for relief in this action upon 28 U.S.C. § 1651(a), which provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That statute does

---

16. 28 U.S.C. § 1361 provides:
 "*Action to compel an officer of the United States to perform his duty.*
 "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

17. It was suggested at a preliminary conference in the instant case that the record on such an appeal would not be as full as

the record which has been made in the instant case. However, all material which has been included in the record in this case by stipulation or otherwise, could be made available to the Court of Appeals by some appropriate method. This court attempted to obtain as complete a record as possible in the case before deciding the question of jurisdiction, so that such a record would be available not only in this case, but for possible use in other proceedings.

not authorize a party to seek a writ of mandamus or prohibition as a substitute for an appeal. Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L. Ed.2d 152 (1964); Crowe v. Ragnar Benson, Inc., 307 F.2d 73, 75 (3 Cir. 1962), cert. den. 371 U.S. 940, 83 S.Ct. 319, 9 L.Ed.2d 275 (1962).

E. Based upon 28 U.S.C. § 1361, see n. 16, plaintiff requests "[t]hat this Court issue a writ of mandamus to prevent the said Judicial Council from exceeding its jurisdictional powers and to prohibit the said Judicial Council from requiring plaintiff to terminate his services as attorney for the Trustee in the matter of Imperial '400' National, Inc."

The Court in *Chandler* left open the question whether § 1361 could be used by an aggrieved party to review the actions of a judicial council, on the theory that the activities of a council constitute "agency action". 398 U.S. at 87, n. 8, 90 S.Ct. 1648. That such review by a district court "would present serious incongruities and practical problems" was pointed out in Justice Harlan's concurring opinion. 398 U.S. at 94, 90 S.Ct. at 1658. In *Chandler* the Court declined to grant the extraordinary relief of mandamus or prohibition in view of the fact that Judge Chandler had been offered an opportunity, which he had rejected, to appear before the Judicial Council of the Tenth Circuit.

 The circumstances in this case are different; but this court concludes that in view of the entry of the May 2 order by Judge Shaw, and the appeal from that order taken by plaintiff, this court should deny the extraordinary relief of mandamus.

F. In his amended complaint plaintiff requested that a three-judge district court be convened.[18] In view of the rulings made above, it is not necessary to convene a three-judge court.

18. Plaintiff cited 28 U.S.C. § 2281, but he evidently intended 28 U.S.C. § 2282.

19. This action raises a number of important questions which should be settled. Perhaps the questions raised by the par-

The court will enter a judgment dismissing the amended complaint, with costs.[19]

## APPENDIX A

### JUDICIAL COUNCIL OF THE THIRD CIRCUIT ONE HUNDRED EIGHTY–SEVENTH MEETING

A meeting of the Judicial Council of the Third Circuit was held in the Chambers of Chief Judge Seitz (Second Floor, United States Courthouse, Philadelphia, Pa.) on February 10, 1972, at 1:00 P.M. pursuant to the call of Chief Judge Seitz, who presided, Senior Circuit Judge Hastie, and Circuit Judges Van Dusen, Aldisert, Adams, Gibbons, Rosenn and Rosen. Judge Hunter was excused because of illness.

It was moved by Judge Adams, seconded by Judge Aldisert and unanimously carried that the oral call of the court for this meeting be ratified.

The minutes of the Judicial Council meeting of January 13, 1972 were approved as distributed.

IMPERIAL "400"

The Chief Judge presented to the Council problems growing out of the reorganization of the Imperial "400" National, Inc. et al., Nos. 71–1550/1556. He presented a letter he had received dated February 7, 1972 from Judge Shaw reporting on current developments in this proceeding. It was the consensus of the Council that action on Judge Shaw's report be withheld until the end of February, 1972.

Judge Seitz also informed the Council of the communication to him under date of January 31, 1972 from Judges Van Dusen and Adams, as a result of some matters presented to them at a recent panel hearing in the Imperial "400"

ties in this case which are not decided by the courts in the several proceedings now pending should be considered by a committee of the Judicial Conference of the United States.

Reorganization proceeding. They expressed a concern on two points: One, the importance of a prompt determination of the best available plan of reorganization and two, the impropriety or appearance of impropriety because of the friction between counsel for the trustee in this proceeding (Mr. Nolan) and certain creditors. The letter pointed out that although counsel for the trustee has disqualified himself from acting on the plans, he continues to advise the trustee on a regular basis in other matters. The trustee favors the last plan filed, submitted by an important client of his counsel's law firm, although a plan favored by many creditors had been submitted months before. Judge James Rosen expressed the view that counsel for the trustee should be removed immediately. Chief Judge Seitz posed the question of what power the Council had to remove him. The Council was unanimously in favor of advising Judge Shaw that problems pertaining to counsel for the trustee had been brought to the attention of the Council by various documents that have been filed in the court and that he be instructed that it was their belief that counsel for the trustee should be removed, pointing out to him that we think that his situation gives an appearance to the public of impropriety. Moreover, in this instance, the trustee is a lawyer and his counsel appears to have a conflicting interest. Chief Judge Seitz stated that he would write an appropriate letter but would first inform Judge Augelli as a matter of courtesy as to what he proposed to do.

Upon motion of Judge Aldisert, seconded by Judge Max Rosenn and unanimously carried, it was

RESOLVED that in all bankruptcy proceedings this Council holds as incompatible the continued representation as attorney for the trustee by any lawyer or his firm who represents a third party who submits a plan for reorganization in the bankruptcy; and that the recusal by the attorney only from commenting on proposed reorganization plans is not an adequate immunization from the appearance of a conflict of interest.

The meeting was adjourned at 1:40 P.M.

Max Rosenn 
Secretary

APPENDIX B 
March 10, 1972 
Dear Judge Shaw: 
* * *

I must now refer to another distasteful aspect of Imperial "400". The Third Circuit Counsel discussed at length the situation raised on certain appeals therein with respect to the status of the attorney for the trustee. The Council was advised that the law firm of the attorney for the trustee represents a client which is seeking to secure control of the assets under one of the proposed plans. The Council was further advised that in view of these circumstances the attorney for the trustee has taken the position that he will not act as attorney for the trustee in connection with any responsibilities the trustee may have with respect to the approval of a plan but that he will continue to represent the trustee in other matters of the trusteeship; further that this approach had your actual or tacit approval. Acting on these factual bases and after elaborate discussion the Council passed a resolution to the following effect:

"Where a law firm with which an attorney for a trustee in reorganization is associated represents any other entity involved in the reorganization proceedings and such relationship may create the appearance of a conflict of interest, the attorney for the trustee should not longer serve."

The Council instructed me to call this resolution to your attention so that you could bring it to the attention of the attorney for the trustee of Imperial "400". I take the personal liberty of suggesting to you that I think the attorney should be given the opportunity to resign. I emphasize that the Council did not find

that there was a conflict of interest in fact but only that the "appearance" was such that the relationship should not be permitted to continue.

I realize that this will be of real concern to you but I know you realize that some of the appeals in this case have caused much concern to the judges hearing them. Above all, I personally hope that this will not interfere with the progress of the reorganization. I have such hope because the attorney for the trustee is not involved in the approval of a plan and the trustee is himself an attorney.

\* \* \* \* \* \*

Sincerely,

COLLINS J. SEITZ

cc: All Active Judges
Except Judge Gibbons