In the Matter of IMPERIAL "400" NA-TIONAL, INC., a Delaware corporation, Bristol Financial Corporation, a New Jersey corporation, Imperial "400" Corporation, a Nevada corporation, Imperial "400" Land Corporation, a Delaware corporation, Motor Hotel Properties, Inc., a New Jersey corporation, Trans-National Development Corporation, a New Jersey corporation, Four Hundred Construction Corporation, a Delaware corporation, National Motel Construction Company, a California corporation, and Trans-World Motel Supply Corporation, a California corporation, Debtors.

No. B 656–65.

United States District Court
D. New Jersey.
Aug. 31, 1967.

**352**

Joseph M. Nolan, Jerome M. Lynes, Newark, N. J., Roger Widmann, Securities and Exchange Commission, New York City, for Trustee.

Morris M. Ravin and Nathan Ravin, pro se.

Albert S. Gross, pro se.

Myron S. Lehman, pro se.

## OPINION

SHAW, District Judge.

The proceedings pending herein are on a Chapter X petition filed pursuant to

the Bankruptcy Act. The instant matter before the Court is on petition of the Trustee and Order to Show Cause issued by the Court pursuant thereto. The Order to Show Cause is directed to the attorneys for the debtors (Imperial) pursuant to the provisions of Section 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d) [1] relating to payment of fees made for services rendered or to be rendered in contemplation of filing a Chapter XI petition under the Act.

On June 3, 1965 Imperial filed a petition under Chapter XI. On February 18, 1966 an amended petition under Chapter X was filed. (See Opinion of this Court filed January 31, 1966, 274 F.Supp. 342 as a result of which the Chapter X petition was filed.)

A trustee and counsel were appointed and investigation conducted as to the affairs of Imperial prior to the filing of the Chapter XI petition. The investigation brought to light the propriety of the present application to the Court to examine the amount of fees paid to attorneys for Imperial in contemplation of filing the Chapter XI petition and to determine whether such fees were reasonable.

The attorneys are Albert S. Gross of the firm of Gross and Gross, Morris M. Ravin and Nathan Ravin of the firm of Ravin and Ravin, and Myron S. Lehman. In response to the petition of the Trustee, the supporting affidavit of counsel for the Trustee, and the Order to Show Cause, affidavits were filed by these attorneys stating the circumstances pursuant to which each was separately retained, the amounts of fees received, and the legal services allegedly rendered. On application of the Securities and Exchange Commission (S.E.C.) each was examined under oath as to the statements made by affidavit and related sub-

1. Section 60(d) of the Act, 11 U.S.C. § 96(d):

    If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.

ject matter. The pertinent facts developed on the affidavits filed and by testimony, as the Court finds them, may be summarized as follows:

Albert S. Gross was admitted to the practice of law in 1932. The firm of Gross and Gross, in which he was a partner, engaged in the general practice of law. Any services rendered to Imperial were by Albert S. Gross. He had very little experience in Chapter XI proceedings, never having handled one as a principal attorney. He represented Imperial since 1962 on matters which were not assigned to house counsel. According to his testimony, his retainer during 1964 was $5,000 per annum and the total amount of retainer and fees received by him during that year was $11,291.18. He testified that the retainer was increased to $15,000 during March of 1965. Reference is made to the retainer arrangement and gross amount of retainer and fees received in 1964 because of a claim of $26,000 for legal services which will be discussed later.

On May 28, 1965 three checks were drawn on an Imperial account in the Franklin National Bank in New York payable to the order of "Gross and Gross Attorneys" in the following amounts:

$15,000.00
$24,000.00
$11,000.00

These checks in the sum total of $50,000 were endorsed for deposit in the account of "Gross and Gross, Regular". They were returned by the bank with a notation "Refer to maker". The date upon which Gross and Gross or officers of Imperial had knowledge that the checks would not be honored by the Franklin National Bank has not been established. But it seems from the stamped endorsements, notations of June dates, reasonable clearance time, and usual time for return of the checks to Gross and Gross, that receipt of return probably occurred after June 1, 1965. It may be that officers of Imperial or Gross and Gross had knowledge prior to the return of these checks that they would not be honored, but, as stated above, the record is silent on this. The attempt, however, to clear $50,000 out of Imperial's account by checks dated May 28, 1965 is significant in the light of what followed. On that same day, May 28, 1965, two checks payable to the order of "Gross & Gross Attorneys" were drawn on an Imperial account in the Union Bank of California. These checks were certified[2]. The amounts were $24,000 and $15,000, a total of $39,000. These were endorsed for deposit in the account of "Gross & Gross, Attorneys" and the proceeds retained by Gross and Gross as fees. Albert S. Gross testified that $15,000 was for services in connection with the Chapter XI petition and $24,000 was for other legal services.

An invoice of Gross and Gross dated May 28, 1965, found in Imperial files recites:

Retainer: Petition for Re-organization or other appropriate proceedings in the United States District Court, District of New Jersey
$24,000.00

On June 30, 1966 Albert S. Gross wrote to counsel for the Trustee stating:

June 30th, 1966

Joseph M. Nolan
Attorney for Trustee
Imperial "400" National, Inc.
460 Sylvan Avenue
Englewood Cliffs, New Jersey

Dear Mr. Nolan:

I forgot to tell you that the $15,000 check represented services in connection with the petition for re-organization and these of course have continued from that time to the present. *This letter is likewise written without prejudice.* (Emphasis supplied)

Yours very truly,
GROSS AND GROSS
s/Albert S. Gross lcl
ALBERT S. GROSS

2. These checks appear to have been certified on June 1, 1965.

354

It seems strange that an officer of the court, reporting on a factual matter of this kind, would feel that it was necessary to shield himself with the qualification that the statement was without prejudice.

According to the statements of Mr. Gross under oath, the proceeds of the check in the amount of $15,000 were credited against the $24,000 invoice and the $24,000 check was credited against an antecedent bill for legal services in the amount of $26,000. At this juncture it might be mentioned that the Trustee, acting upon the assertion of Mr. Gross that the amount of $24,000 was paid for antecedent legal services, instituted a plenary action against "Albert S. Gross, Nelson G. Gross and R. Michael Gross, Individually and as a partnership trading as Gross and Gross * * *" in this Court, Civil No. 1145–66 to void what appeared to be a preference. Section 60 (a) (1) and (b), 11 U.S.C. § 96(a) (1) and (b) [3].

Gross and Gross by Albert S. Gross filed an Answer to the Complaint in the plenary action alleging, among other things, by separate affirmative defenses that:

### THIRD SEPARATE DEFENSE

The defendants had no knowledge, notice or information of insolvency or bankruptcy and said payments constituted no preference.

### FOURTH SEPARATE DEFENSE

The debtor corporations were not insolvent or bankrupt nor had they or any one of them committed an act of bankruptcy prior to said payments.

\* \* \* \* \* \*

### SIXTH SEPARATE DEFENSE

Defendants had no reasonable cause to believe that said debtor corporations were insolvent within the purview of the Bankruptcy Act.

### SEVENTH SEPARATE DEFENSE

The alleged payments were not made within the prohibited Four (4) month period.

Considered in the light of the statements made by Albert S. Gross under oath in this proceeding, the above mentioned allegations by way of affirmative defenses in the plenary action are patently false. Expeditious disposition of the plenary action is indicated so that no further delay can be accomplished by any sham defense and appropriate instructions will be given to the Trustee in connection therewith at the conclusion of this Opinion.

It has been noted that the above mentioned checks were dated May 28, 1965, and that the Chapter XI petition was filed on June 3, 1965. It seems quite unlikely that reorganization of Imperial was first contemplated on or about May

3. (a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: *Provided, however*, That where such purchaser or lienor has given less than such value, he shall nevertheless have a lien upon such property, but only to the extent of the consideration actually given by him. Where a preference by way of lien or security title is voidable, the court may on due notice order such lien or title to be preserved for the benefit of the estate, in which event such lien or title shall pass to the trustee. For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened in any court of bankruptcy shall have concurrent jurisdiction.

28, 1965, and more likely that it had been contemplated for a substantial period of time prior thereto. The record of its financial affairs from January 1965, as developed in the proceedings on the S.E.C. motion to dismiss the Chapter XI petition, indicate this probability.

According to the testimony of Mr. Gross, the firm of Gross and Gross intended initially to handle the contemplated reorganization proceedings. Subsequently it was decided that the matter was too complicated and Mr. Gross called Myron S. Lehman by telephone on June 1, 1965 to discuss the matter. After discussion over the telephone, Mr. Lehman recommended Ravin and Ravin as co-counsel and on that date Mr. Gross and Mr. Lehman called Nathan Ravin to discuss the matter with him. Except for the telephone conversations on June 1st, there were no legal services rendered. The three met in Englewood with officers of Imperial on June 2, 1965. A considerable period of time was spent discussing legal fees. Agreement was reached as to a joint fee of $45,000 and a check in the amount of $28,595.50 dated May 28, 1965 and payable to the order of Bristol Financial Corporation (one of the debtors) was endorsed to the order of Imperial and further endorsed by the president of Imperial to the order of "Ravin and Ravin". This check was deposited in the account of "Ravin and Ravin, Special".

The amount of this check represented the discounted proceeds of the sale of a mortgage note in the principal sum of $38,250 resulting in a net loss to Imperial of face value in the sum of $9,562.50. The transaction also included an increase in the interest rate from 6½% to 8% resulting in an additional cost to Imperial of $1,633.67 over the mortgage term. Accordingly, we have a situation where, on the face of the transaction, it cost Imperial $11,196.17 in order to make legal fees in the amount of $28,595.50 available to counsel. All counsel deny any knowledge of the underlying mortgage note sale transaction by virtue of which the check in the amount of $28,-595.50 was obtained. Myron S. Lehman and Nathan Ravin deny that they were aware of the fact that a check in the amount of $24,000 was received by Gross and Gross prior to the filing of the Chapter XI proceeding and, further, that they were not aware that three other checks in the amounts of $11,000, $24,000, and $15,000 had been turned over to Gross and Gross. According to them, they learned of this many months after the filing of the Chapter XI petition.

The check in the amount of $28,595.50 seems to have been intended as legal fees which Ravin and Ravin and Myron S. Lehman would share after deduction of the disbursement for filing fees. As far as can be determined from the record, it seems to have been understood that the balance of the agreed counsel fee of $45,000 would be paid by Imperial directly to Gross and Gross.

After the conferences as to legal fees and the financial state of Imperial's affairs were concluded on June 2, 1965, preparation of papers to initiate a Chapter XI proceeding began. Mr. Lehman stated that he participated with Nathan Ravin in the preparation of these papers, but it seems to this Court in the light of all of the testimony that his assistance, if any, was minimal consisting chiefly of making secretarial assistance available to Nathan Ravin. Admittedly Mr. Gross did not prepare any papers for filing. There is, however, evidence that Mr. Gross was present with Mr. Ravin in his office while papers were being prepared and that he was in the Clerk's office on June 3, 1965 when the Chapter XI petition was filed. Nathan Ravin did the actual work. His brother, Morris Ravin, who was at home ill, participated in telephone consultations.

The services rendered by each of counsel after the initial conference on June 2, 1965 are summarized in the following testimony of Nathan Ravin:

Q. Did you do any work, any further work for Imperial on June 2nd after the conference?

A. Oh, sure. I got back to the office at 5:00 I was dictating to the girls

in the office during the day. When I got back Mr. Lehman let me have one of his secretaries. I had one or two of my girls there, and we were in the office until 8:00 or 9:00 o'clock preparing papers.

Q. What work, if any, did Mr. Morris Ravin perform up to this point?

A. Morris Ravin was at home at the time. I remember calling him three, four or five times from the office of Imperial. We did discuss whether to file a Chapter X or XI. We did discuss the question of resolutions. I called him so many times his wife asked me not to call any more because he was ill.

Q. You don't remember what it was that you dictated that evening?

A. It was the original petition for arrangement, resolutions, petition for the appointment of a Receiver, order to extend the time for filing schedules in the 322 section, consolidated statements.

Q. Was that all that evening?

A. Oh, yes.

Q. Did you dictate a long form or short form petition?

A. Short form. That is why I got the order to extend the time for filing schedules.

Q. What did you do the next day?

A. The next day—I guess about four or five officers of the corporation were present in my office. We put the schedules together. We had about eight or nine corporations with different officers. We had them execute resolutions, and had them sign the petitions.

Q. Was Mr. Lehman present during any of that work?

A. Mr. Lehman left the night before.

Q. Was Mr. Gross present at any of that work?

A. Mr. Gross came to my office at that time. He was there with the other officers of the corporation.

Q. Throughout the period of this work?

A. Yes.

Q. On that day?

A. On the 3rd, yes, sir.

Q. When was the petition filed that day?

A. It was before noon. I am quite certain it was before 12:00 o'clock of that day.

Q. Up to that point had Mr. Gross performed any services?

A. He was there up to noon of June 3rd. He was with me all day on the 2nd.

THE COURT: Except for being with you, what did he do?

THE WITNESS: As I recall, he was getting me resolutions together, the information for the resolutions. He discussed with me the advisability of filing a Chapter X or a Chapter XI, and in fact I think we did prepare certain resolutions at the premises. I think we used one of their bookkeepers.

Q. During the period from then until noon on June 3rd what did Mr. Gross do, what legal services?

A. Mr. Gross—as I recall, there was some problem with the resolutions, and Mr. Gross went through his legal files, and I believe he came up with a power of attorney authorizing Bernard Whitney to execute these petitions, and I do recall he also called Angelo Locasio, the Deputy Clerk here, as to these resolutions. I am quite certain he did.

Q. Could you estimate how many hours you spent during the period from your recollection to the filing of the petition on Imperial matters?

A. Would that include appearing before the Referee on a petition to appoint a Receiver and authorization to file a short form petition? I would say twenty-five or thirty hours. Twenty-five hours would

be it. Twenty-five hours. I know it was all day the 2nd until 9:00 or 10:00 o'clock that evening, and I met with these gentlemen in my office. I recall being that day up at 8:00 o'clock to whip the thing into shape. I believe it was before noon that I submitted the petition to the Clerk here, and then I appeared before the Referee and met with him for an hour or an hour and a half.

I brought with me the statement of the debtor corporation setting forth what the assets were, what the liabilities were, and what type of operation they had.

Q. Who prepared that statement?

A. That was a printed form that was at Imperial, a brochure.

Q. To your knowledge none of the attorneys involved here prepared that?

A. That was a printed form that was sent down perhaps to prospective investors, I'm not certain, but it was from that form that I took the figures annexed to the Chapter XI proceeding.

Q. Was that an annual report you are talking about?

A. It may have been.

It is difficult to escape the conclusion that the services rendered by Albert S. Gross and Myron S. Lehman prior to the filing of the Chapter XI petition were primarily of a referral nature. Albert S. Gross had no experience of any consequence in reorganization proceedings. He called upon Myron S. Lehman who found that the complicated reorganization of Imperial presented problems of such complexity that he did not feel that he could participate as counsel without assistance. Hence Ravin and Ravin was brought into the picture to provide the necessary expertise which that firm had developed by reason of specialized knowledge and extensive experience in the field of corporate reorganization. No legal services of substantial value were provided by other counsel prior to the filing

of the Chapter XI petition. Indeed, it does not appear that Nathan Ravin required any assistance other than the furnishing of information to be extracted from Imperial files for guidance in the preparation of a short form petition with a schedule of assets and liabilities attached (the annual report) and preparation of necessary resolutions.

It has been determined that the Chapter XI proceeding was ill advised. (See earlier Opinion of this Court on motion of S.E.C.) However, neither Mr. Lehman nor Nathan Ravin can be charged with the quality of legal advice on this. They came in on short notice without any prior knowledge of the history of financing operations and without opportunity in point of time to make an analytical study of the complex corporate structure which would be necessary for the best informed decision. Moreover, the statement of assets and liabilities furnished to them presented far less than a true picture. The extent to which Albert S. Gross, who claimed intimate association with the currently developing problems of Imperial, had reasonably accurate knowledge of the true state of its financial affairs is not known at this time. Moreover, his admitted lack of experience in corporate reorganization hardly placed him in a position to advise whether a Chapter X or a Chapter XI proceeding was the appropriate course to take. Indeed, it was this lack of experience which led him to call upon other counsel.

One further point merits discussion. It has previously been noted that the check of $28,595.50 did not pass through an Imperial account, but was endorsed to the order of Ravin and Ravin. Nothing appears in the record which would support a contention that authority had been delegated to the president of Imperial to transfer the proceeds of this check to Ravin and Ravin by his endorsement. The transaction was irregular upon its face and when the Court asked for an explanation it was furnished in a letter of Nathan Ravin which will be made part of the file. The gist of the explanation is that Nathan Ravin had no knowledge

of the mortgage sale transaction; the check was deposited in a trust account of Ravin and Ravin; if the check had been deposited in an Imperial account and the Chapter XI petition filed, funds would not have been available to reimburse for filing fee or for payment of a fee to counsel; and further, that the first withdrawal for counsel fees was by check drawn on June 29, 1965, payable to Myron S. Lehman in the sum of $14,072.75 representing one-half of the then existing balance. $450 had been paid to the Clerk of the Court for filing fees. Subsequent to the payment of $14,072.75 to Mr. Lehman, Ravin and Ravin drew a check for the remaining balance in the same amount.

■ The amount of $28,145.50 remaining in the *trust account* of Ravin and Ravin *after* the filing of the Chapter XI petition was the property of Imperial of which it could not be divested for purposes of payment of counsel fees, except as ordered by the Court, or for any other purpose except as authorized by the Receiver acting under the supervision of the Court. There is no valid distinction between a situation where a receivable fund belonging to, and in the hands of a debtor, is placed in its account prior to the filing of a petition, and one where such fund is placed in the trust account of another. In either instance the fund is the property of the debtor and, upon the appointment of a Receiver, control of the disposition of it is in him acting under the supervision of the Court. This is so despite the fact that the president of Imperial endorsed the check to the order of "Ravin & Ravin" and regardless of the further fact that it was contemplated that the proceeds of the check were to be applied to payment of counsel fees for services rendered in contemplation of reorganization, as well as for advance payment of fees for services to be rendered during the Chapter XI proceedings.

The same result would obtain even if the check had been deposited in an account of "Ravin & Ravin" in accordance with the endorsement thereof to that firm. The proceeds would still be impressed with a trust even though it was not apparent on the face of the transaction. The amount of the check was an account receivable belonging to Imperial and apparently transferred by endorsement of an officer, not in the regular course of business, and apparently in the absence of any delegated authority to make such transfer. And according to the explanation given for this transaction, the money was to be held in trust for future payment of counsel fees. The amount, in and of itself, is not of consequence. The principle involved is what concerns the Court. If this method could be used to place assets of a debtor in trust prior to the filing of a petition for later withdrawal by the attorney trustee in the exercise of his discretion, the control of the debtor's property by the Court and the Receiver, particularly in the matter of approval of counsel fees for services rendered after the filing of a petition, would be seriously impaired if not completely sterile.

■ Counsel were entitled to receive a reasonable attorneys fee "for services rendered or to be rendered" in contemplation of the filing of the petition and it might well be said in this instance that some part of the proceeds of $28,-145.50 constituting a reasonable allowance should now be allowed, but to do so would be to condone the method used. Transfer of assets of a debtor prior to the filing of the petition, not made in the regular course of business, and not readily discoverable from the corporate records, is not to be encouraged.

■ The reasonableness of a fee received is a matter for the Court to determine and the determination of whether or not the fee was unreasonable in amount should be made as soon as practicable after the filing of the petition. This would assure that all available working capital of the debtor would be in the hands of the Receiver during the early and most critical stages of the reorganization proceedings.

Nothing that has been stated is to be construed as meaning that Ravin and

Ravin did not act with good intentions and perhaps, to some degree, consistently with what has been alleged to have been the practice in other cases based upon an understanding that counsel for the debtor is entitled, in securing payment of a reasonable fee, to take into account not only the minimal work of initiating the reorganization proceedings, but also the degree to which he will be subjected to hardship by waiting until the termination of the proceedings to be paid for extensive services rendered during the pendency. In this particular instance the Court feels that it is very likely that the amount of $14,072.75 covering services rendered in contemplation of the filing of the petition and services rendered and disbursements incurred thereafter is not unreasonable. It might well be that Ravin and Ravin will ultimately be entitled to a greater sum, but these are matters which the Court cannot determine with finality at this time.

█ The extent to which the services rendered during the pendency of the reorganization proceedings were necessary and beneficial to the estate cannot be evaluated until a plan of reorganization is approved or the proceedings herein otherwise terminated. The Court agrees with counsel's contention that the time factor is not the sole guide in evaluating legal services. The size of the estate, the complexity of the debtor's affairs, the expertise of counsel, and the results achieved directly attributable to the services of counsel, among other factors, must be given consideration in fixing reasonable fees.

█ By reason of the fact that the amount of $28,145.50 remaining after payment of the filing fee of $450 was the property of the debtor held in a trust account of Ravin and Ravin and subsequently paid out as counsel fees leads this Court to the conclusion that this amount less the further filing fee of $650 for the Chapter X petition should be refunded to the Trustee and that award of reasonable counsel fees to be paid to Myron S. Lehman and Ravin and Ravin, both for services rendered prior to the filing of the petition and thereafter, must await termination of the reorganization proceedings.

█ As to the trust account situation, the same reasoning can be applied to Gross and Gross. Also the Court is not satisfied from the evidence that it has been furnished with reasonably accurate and unequivocal information on which it could make a rational determination of what would be reasonable compensation for the minimal services performed by Gross and Gross in contemplation of the filing of a Chapter XI petition. The Court concludes that the amount of $15,000 received by Gross and Gross should be refunded to the Trustee. Application for allowance by that firm for services rendered both before and after the filing of the petition and disbursements incurred may be made after the plan of reorganization is approved or the proceedings herein otherwise terminated.

█ A factor that may be considered in the ultimate award of counsel fees is the extent to which any part of the fee held by counsel was an unreasonable fee whereby counsel had the use of the funds to the detriment of the management of the estate.

The Court has indicated that the action of Nathan Ravin in accepting the check for counsel fees was probably done with good intentions and prompted by the exigency of the situation with which he was confronted and a conception that the same was in accord with accepted practice. It should also be added that the Court was impressed with the candor and forthright disclosure by Mr. Ravin of the pertinent facts in the testimony given, the affidavits filed, and his letter of explanation of the circumstances pursuant to which the check was accepted and deposited in a trust account. Accordingly, no inference of any intentional wrongdoing on his part is to be drawn from anything that has been stated herein. As to Myron S. Lehman and Albert S. Gross, any final characterization of their actions in the matter, other than expressly stated in this Opinion, would be premature.

It will be determined in the plenary action of the Trustee instituted against Gross and Gross whether or not that firm procured a voidable preference and, if it be determined that there was a voidable preference, such would be a further factor to be considered in connection with any allowance of counsel fee to that firm.

Gross and Gross will be directed by order of the Court to file a Verified Answer in the plenary action, Civil No. 1145–66, within 20 days of the entry of such order and a copy of this Opinion will be filed in that action. Immediately after the filing of a Verified Answer by Gross and Gross, the Trustee, by counsel, shall take such action as may be necessary to bring the matter before the Court promptly for final disposition.

Counsel for the Trustee will submit separate and appropriate orders in conformity herewith to be filed in this matter and in Civil No. 1145–66.