In the matter of CYBERN EDUCATION, INC., Debtor.

UNITED STATES of America, Appellant,

v.

Harry A. ASH et al., Appellees.

No. 72–1131.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1973.

Decided April 27, 1973.

As Amended on Denial of Rehearing June 13, 1973.

David Ferber, Sol., S. E. C., Washington, D. C., John I. Mayer, S. E. C., Chicago, Ill., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Thomas Boerschinger, Atty., Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., for appellant.

Mark A. Greenhouse, Kevin J. Gillogly, Chicago, Ill., for appellees.

Before FAIRCHILD, STEVENS and SPRECHER, Circuit Judges.

PER CURIAM.

In appealing the allowance of interim fees to a trustee in bankruptcy and his attorneys of $45,000 in a $45,000 estate, the United States and the Securities and Exchange Commission have urged that we enforce several standards and guidelines of compensation in order to retain "close judicial control" over bankruptcy costs.

I

On August 31, 1970, Cybern Education, Inc., petitioned for an arrangement under Chapter XI of the Bankruptcy Act. Ten days later the corporation amended its petition to transfer the proceedings to Chapter X. On September 15, 1970, the district judge appointed Harry A. Ash trustee for the debtor. On September 17, on Ash's petition, the court authorized him to employ Louis I. Kessler and Kevin J. Gillogly "in all matters pertaining to the above entitled estate under a general retainer, and to pay said attorneys a reasonable compensation for their services out of the funds of the within estate, the amount thereof subject to the determination of this Court."

On September 22, the trustee was authorized and directed to operate the debtor's business, open new books of account, file monthly reports, investigate the debtor's financial condition and report thereon in 60 days, and on or before November 27, 1970 to prepare and file a plan of reorganization or a report of his reasons why a plan could not be effected. On September 25, the debtor turned over to the trustee some $4,000 in cash. Within a short time thereafter over $10,000 in accounts receivable were collected in the debtor's estate.

On September 25, 1970, the Securities and Exchange Commission filed its appearance in accordance with Section 208 and requested notice of "all steps taken in this proceeding" pursuant to Section 265a of the Bankruptcy Act (11 U.S.C. §§ 608 and 665).

On October 13 on the application of the trustee, the district court authorized and directed the trustee to employ the president of the debtor corporation at an annual salary of $38,500 and the secretary at an annual salary of $15,000, both salaries being the same as those previously paid by the corporation. On October 20, the corporation borrowed $15,000 from one of its shareholders for operating expenses. The trustee collected over $50,000 additional accounts receivable, more than half of the total amount coming from the United States government and the University of Illinois.

The trustee ceased the day-to-day operation of the debtor's business on February 28, 1971.

On April 23, 1971, the trustee sold the assets and good will of a division of the debtor known as Cine-Probst, Inc. to Charles O. Probst, the manager of the division, for $4,500. On April 27, he sold the New York office furnishings of the debtor for $1,350. On June 17, he sold the debtor's Washington, D. C. office furniture and equipment to the sub-tenant of debtor's District of Columbia lease. On July 30, he sold certain of the debtor's intangibles (contracts, educational systems, copyrights) for $30,000 through the efforts of Dr. Joseph A. Tucker who was paid a $6,000 commission on the sale.

On October 15, 1971, the trustee filed his petition for interim fees of $22,500 for himself and $22,500 for his two attorneys. Copies were served on counsel for SEC on the previous day. Neither the petition for fees nor notice was served on the Internal Revenue Service, which had a claim against debtor of $56,566.48, nor otherwise upon the United States nor upon other creditors or shareholders of the debtor. The trustee represented in his fee petition that he was holding $61,000 subject to $16,000

in obligations or a net estate of $45,000. On October 15, the court heard arguments on the fees and on October 19, the court approved the fees and this appeal followed.

II

The Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States, in its note to the proposed new rule on compensation for services in Chapter X cases, stated:[1]

"The premise for including in these rules provisions governing the allowance of compensation to officers, attorneys and accountants is that it is peculiarly a judicial responsibility to supervise the administration of estates and in particular to assure that allowances for compensation to those rendering services in connection therewith are fair but not excessive. 3A Collier ¶ 62.05 [3] (1961). The costs of bankruptcy administration have been a matter of continuing concern in the history of American bankruptcy law. Id. ¶ 62.02. This concern has led to an increasing recognition of the necessity for close judicial control of these costs."

What we have recited above constitutes a summary of the entire Chapter X proceedings. The debtor corporation was operated under the trustee's supervision for only five months. The well-paid president and secretary of the corporation were kept on at their prior salaries and presumably performed all of the day-to-day business operations.

The services rendered by the trustee and his attorneys consisted of (1) borrowing $15,000 from an obvious lender, one of the debtor's shareholders; (2) collecting some $60,000 in accounts receivable from financially responsible persons, about half of the total being paid by the United States and the University of Illinois; (3) selling a division

---

1. Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Bankruptcy Rules and Official Forms Under Chapter X of the Bankruptcy Act (December, 1972), Advisory Committee Note to Rule 10–215, p. 60.

of the debtor corporation to an obvious purchaser, its former manager; (4) selling furniture and equipment to a sub-tenant who was already leasing them; (5) disposing of certain intangible assets through Dr. Joseph A. Tucker who received a 20% commission; and (6) determining that it was useless to continue under Chapter X. The trustee submitted to the court 26 reports, 22 of which were one-page summaries of receipts and disbursements for a weekly or monthly period. These reports and the trustee's petition for fees showed that there was about $61,000 left in the estate subject to some $16,000 in trustee obligations, or a net estate of about $45,000, all of which the trustee claimed for himself and his attorneys. The court promptly awarded all of the net estate to them as "interim allowance" without terminating the long-dormant estate and presumably leaving the door open for additional fees if any more assets materialized in the debtor's estate.

The fee petition included a detailed statement of services of the attorneys, mainly devoted to "conferences," totalling 439¾ hours, or $51 per hour. Inasmuch as there were no hours scheduled for the trustee and in view of the great number of hours spent by his attorneys in a routine proceeding, it is apparent that the charge is closer to $102 per hour. The petition, verified by the trustee, also contained a five-page general "summary of services rendered," indicating those services heretofore outlined. Each of the three applicants for allowance executed an affidavit swearing (1) that there was no agreement or understanding for a division of compensation and (2) that there was no agreement with any other parties or attorneys in the proceeding to fix fees contrary to 18 U.S.C. § 155.

Rule X–18 of the Bankruptcy Rules of the United States District Court for the Northern District provides as follows:

"Every application for compensation or allowance shall be verified and shall include (a) a detailed statement of the services rendered and expenses incurred; (b) the amounts separately stated, for which an allowance is sought as compensation and as reimbursement; (c) a copy of the statement, if any, filed pursuant to Section 211 of the Act; (d) a detailed statement bringing the facts in the statement filed pursuant to Section 211, if any up to date; (e) a detailed statement of the facts required to be stated under Section 249 of the Act; (f) a statement by the applicant that he has not entered into any agreement, written or oral, express or implied, with the debtor, receiver, trustee, or any other party in interest, or any attorney of any such persons, for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the assets of the debtor; and (g) such other facts as may be necessary to reveal fully the applicant's connection with the proceeding and with the debtor, receiver or trustee and the parties in interest.

"Unless otherwise ordered, notice of hearing on such applications shall state the names of the applicants, the several capacities in which they have acted, and the amounts, separately stated, sought by each for compensation and for reimbursement."

The fee petition stated that the three applicants did not file statements under oath pursuant to 11 U.S.C. §§ 611 and 649, because the provisions of those sections "do not apply to any of them in this case." It is true that Section 211 applies only to "every person or committee, representing more than twelve creditors or stockholders, and every indenture trustee" but Section 249 applies to "[a]ny persons seeking compensation for services rendered or reimbursement for costs and expenses" incurred in a Chapter X proceeding. That section requires a statement under oath showing claims against, or stock of, the debtor, if any, acquired or transferred after the commencement of the proceeding. The

section provides that applicants for compensation or reimbursement "shall file" the statement. It is a mandatory prerequisite and cannot be avoided by stating that it does not apply.

■ Thus the applicants here did not comply with Section 249 nor with paragraphs (a) and (e) of Rule X–18.

Section 247 (11 U.S.C. § 647) provides in part:

"The judge shall fix a time of hearing for the consideration of applications for allowances, of which hearing notice shall be given to the applicants, the trustee, the debtor, the creditors, stockholders, indenture trustees, the Securities and Exchange Commission and such other persons as the judge may designate, except that notice need not be given to any class of creditors or stockholders which does not participate under the plan as confirmed by the court from which no appeal is pending and the time allowed for appeal has expired."

The notice in the present case was given only to the attorneys for the debtor, the attorney for a stockholders' committee, and the Securities and Exchange Commission. Not only was the notice not sent to any creditor (nor did the exception of Section 247 apply since no plan has been confirmed by the court), but inasmuch as the notice stated that the petition was to be presented to the court on October 15 and the three notices sent were not mailed until 5:00 P. M. on October 12, 1971, there was virtually no opportunity for any creditor to learn of the presentment in sufficient time to contest the fees. On October 15, the attorney for the SEC appeared in court, stated that the Commission had received notice only the day before, and objected to the failure to comply with Section 247, as well as to the amount of the fees requested. Nevertheless, the "hearing," which consisted of argument by one of the applicant-attorneys, took place immediately. The court approved the fees as requested in full without any

further hearing or argument on October 19.

The notice was clearly in violation of the mandatory requirements of Section 247 even as the petition violated Section 249 and Rule X–18. But our concern here runs deeper than the statutory derelictions. It goes to the applicants' paramount interest in their own fees and to the court's purporting to permit the entire estate to be wiped out by the fees in a Chapter X proceeding which was improvidently commenced and should have been quickly terminated with little or no expense. The fact that it was not does not tend to reflect favorably upon the fee applicants nor upon the court's supervision of them.

As we noted in the corporate reorganization proceedings of In re A. Herz, Inc., 81 F.2d 511, 512 (7th Cir. 1936):

"[T]he chancellor in the allowance and fixing of fees . . . must ever be alert lest a reorganization inure to the benefit, not of the distressed debtor and its creditors, but only to those engaged in saving it."

We vacate the order of October 19, 1971, allowing interim allowances of $45,000 and remand with the following directions:

(1) This proceeding shall be reassigned by the executive committee of the district court to another judge.

(2) No applications for compensation and reimbursement shall be considered until the proceeding is ready to be closed and then only as full and final compensation.

(3) Compensation and reimbursement shall be justified by a record showing the specific services performed and such other factors which bear upon the reasonableness of the awards.

(4) Petitions for compensation and reimbursement shall comply with Section 249 of the Bankruptcy Act and with district court Rule X–18.

(5) Notices of presentment of petitions shall be given to all persons specified in Section 247 of the Bankruptcy Act.

(6) Notices of presentment of petitions shall in particular be served upon the Secretary of the Treasury and the Securities and Exchange Commission sufficiently in advance of hearing to permit their staffs to formulate recommendations to their superiors and to obtain authorization for positions to be taken upon such petitions in the district court.

(7) Costs of this appeal shall be charged against the appellees and shall not be paid from the debtor's estate nor shall any attorney's fees relating to this appeal be charged to the debtor's estate.

Vacated and remanded for further proceedings.