In the Matter of **CYBERN EDUCA-TION, INC., Debtor.**

No. 70 B 5299.

United States District Court,
N. D. Illinois, E. D.

June 28, 1974.

Leonard Gesas and Nicholas G. Manos, pro se.

Harry A. Ash, Trustee, Louis I. Kessler and Kevin I. Gillogly, Chicago, Ill., for Trustee.

Paul Stack and Gregory Jones, Asst. U. S. Attys., Chicago, Ill., for United States.

Jesse J. Holland, Chicago, Ill., for James H. McGraw III.

James T. Eichstaedt and Sheldon B. Mazor, for the Securities and Exchange Commission.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter is before the Court for approval of a plan of reorganization; on the motion of the United States of America for an examination of a payment made by the bankrupt, Cybern Education, Inc. ("Cybern"), to two attorneys, Leonard Gesas ("Gesas") and Nicholas G. Manos ("Manos"); and on the motion of the trustee's attorneys for an award of attorneys' fees. For the reasons set forth below, the plan is confirmed, the trustee's attorneys will be awarded $10,000 in fees, and Gesas and Manos shall repay to the trustee $4,800 of a $6,000 fee they previously received.

The early history of this matter is set out in the Seventh Circuit Court of Appeals opinion, In re Cybern Education, Inc., 478 F.2d 1340 (7th Cir. 1973) (*Cybern* I). In that opinion, the court vacated an order allowing interim attorneys fees and ordered a remand of the case with the following instructions:

"(1) This proceeding shall be reassigned by the executive committee of the district court to another judge.

"(2) No applications for compensation or reimbursement shall be considered until the proceeding is ready to be closed and then only as full and final compensation.

"(3) Compensation and reimbursement shall be justified by a record showing the specific services performed and such other factors which bear upon the reasonableness of the awards.

"(4) Petitions for compensation and reimbursement shall comply with Section 249 of the Bankruptcy Act and with district court Rule X–18.

"(5) Notices of presentment of petitions shall be given to all persons specified in Section 247 of the Bankruptcy Act.

"(6) Notices of presentment of petitions shall in particular be served upon the Secretary of the Treasury and the Securities and Exchange Commission sufficiently in advance of hearing to permit their staffs to formulate recommendations to their superiors and to obtain authorization for positions to be taken upon such petitions in the district court.

"(7) Costs of this appeal shall be charged against the appellees and shall not be paid from the debtor's estate nor shall any attorney's fees relating to this appeal be charged to the debtor's estate.

*Id.* at 1344–1345.

Since that time extensive proceedings have gone on before this Court. An amended plan of reorganization has been submitted. In addition, the Internal

Revenue Service ("IRS") and the Securities and Exchange Commission ("SEC") sought and were granted leave to conduct an audit of Cybern. Upon completion of the audit, which was time-consuming, a motion to surcharge the Trustee, Harry Ash ("Ash"), and his attorneys, Kevin Gillogly ("Gillogly") and Louis I. Kessler ("Kessler"), was filed by a creditor, James McGraw. Briefs were filed and in an unpublished opinion this Court denied the motion with certain reservations.[1] See In re Cybern Education, Inc., 70 B 5299 (Memorandum Opinion and Order of April 12, 1974 (*Cybern* II).

The trustee's attorney then filed his application for fees. Hearings were held and briefs filed. During the course of those hearings, it came to the attention of the Court, the government and the creditors that a pre-petition attorneys' fee had been paid to Gesas and Manos. The government sought leave to investigate this fee, a hearing was held, a deposition was taken, and briefs were filed concerning the propriety of that fee.

## I.

In response to the government's motion, this Court has conducted an examination into the fee paid Gesas and Manos. The court finds the facts to be as follows, based upon affidavits, a deposition of Donald Brown ("Brown") and testimony taken in open court. During August 1970, Brown, an attorney and officer and director of Cybern, contacted Gesas and Manos in regard to a possible reorganization of Cybern. At this time Cybern had approximately $135,000 in assets and $835,000 in liabilities. It had approximately $7,000 in cash and $76,000 in accounts receivable, some of which were thought to be uncollectible.

Brown informed Gesas, who was primarily involved in this matter, that he believed $500,000 in new funds could be obtained. Gesas did not ask from whom these funds would be coming or the nature of the commitments. The August 26, 1970 minutes of the Cybern board of directors' meeting reflect that the funds would not be forthcoming.

During August, Brown and Gesas consulted and decided that a Chapter XI proceeding would be filed. Gesas and Brown also discussed the question of a retainer. Gesas requested $6,000.[2] Also during that discussion Gesas briefly mentioned the possibility of a referral fee to Brown, however, none was ever given.

On August 31, 1970, Cybern filed a petition for arrangement under Chapter XI of the Bankruptcy Act. No schedules, which would have disclosed the attorneys' fee, were filed. Ten days later, on the date the schedules were due to be filed, the proceeding was converted to one under Chapter X, and a trustee and counsel for the trustee were appointed.

Gesas and Manos claim that 20 hours were spent prior to the filing of the Chapter XI and that "in excess of 80 hours" were expended after the filing. No time sheets or supporting memoranda, other than a summary affidavit, were presented. There was testimony that numerous conferences were held prior to the filing of the petition. As to the time after the filing and after the appointment of the trustee and his counsel, some additional time was spent, as noted above, on consultation and on opposing a motion to transfer the proceeding to the Southern District of New York.

Gesas and Manos claim that their $6,000 fee is reasonable and justifiable under the terms of § 60(d) of the Bank-

---

1. This Court reserved ruling on the surcharge of the trustee's attorney until the final amount of his fees was determined and pending a determination of what the interim fees had been used for.

2. At the time of the issuance of the retainer check, Cybern did not have sufficient funds

in its account to cover the check. Deposit of the check was delayed while certain receivables were transferred from a trust account held by Brown to Cybern's account in order to provide a sufficient balance.

ruptcy Act, 11 U.S.C. § 96(d). That section provides in relevant part:

> "If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

■ Generally, courts have jurisdiction to examine these fees. See Nicholas v. Berman & Warren, 233 F.2d 384 (5th Cir. 1956). No one challenges this Court's jurisdiction and, indeed, Gesas and Manos have voluntarily agreed to the review by this Court of their fee. The basic question is one of reasonableness as determined from viewing factors such as the amount of time reasonably spent, the nature of the services rendered, the value of the corporation and its capitalization, and the benefit to the corporation. See In re Imperial 400 National, Inc., 274 F.Supp. 351 (D.N.J. 1967).

■ In viewing payments made pursuant to § 60(d), courts have held that an attorney's fee under this statute may relate only to the period of time prior to the filing of the petition. See, e. g., In re Louisiana Loan and Thrift Corp., 416 F.2d 898 (5th Cir. 1969); In re Falk, 30 F.2d 607 (2d Cir. 1929). While the Court of Appeals in this Circuit has not had occasion to determine this issue, this Court believes that the above cited cases represent the best interpretation of the scope of § 60(d). Section 60(d) is meant to allow a corporation to obtain counsel in order to plan and commence its future action and to assure counsel that he will receive his fee without needless delay. Once a petition is filed, however, the matter becomes one for the court's supervision through the appointment of a trustee and an attorney for the trustee. Continuation of the services of the bankrupt's prior counsel normally would be duplicative and certainly should not be routine

■ In the instant case the Court believes that 20 hours worth of time, prior to the filing, was expended and is reasonable and justified and that a reasonable hourly rate is $60 per hour. The Court believes that $1200 is an adequate fee to be allowed to Gesas and Manos in this situation, and that this should be the entire fee allowed them.

First, no court approval was ever sought for the expenditure of time after the filing of the petition. Within 10 days, a Chapter X proceeding was established and a trustee, Harry Ash, who is himself an attorney, and an attorney for the trustee were appointed. Despite this Gesas and Manos purported to continue to perform services for Cybern. They did this on their own, without permission or approval. These services included objecting to a motion to transfer the proceedings to New York. Neither the trustee nor his attorney were involved in this motion. Since Cybern's main offices were in New York, the value of these services to the bankrupt seems highly questionable. Their actions thus have a volunteer character to them and should not be recompensed absent appropriate authorization or demonstrable benefit to the debtor.

The Court is also concerned that aside from the check to Gesas and Manos, and certain corporate entries, no other recordation of the fee was made. No report or request for fees was filed with the Court prior to the government's motion. In fact, it was only recently, through the persistent efforts of the government's counsel, that the existence of this fee became known. Perhaps a change in the rules, to require any attorney receiving a § 60(d) fee in every case to report it to the Court along with supporting materials, would be appropriate. There also has been a complete failure by Gesas and Manos to file the appropriate request or statements. See, e. g., § 249

of the Bankruptcy Act, 11 U.S.C. § 649 and Northern District of Illinois Local Bankruptcy Rule X–18. But beyond this, insufficient evidence has been presented to support the expenditure of an additional 80 hours by them on the bankrupt estate.

In summary, the Court believes that a $6,000 fee was unreasonable in light of the financial situation of Cybern and the fact that most of its cash reserves were called upon to pay the fee, even to the point of delaying deposit of the check in order to accumulate sufficient funds to cover it.

Accordingly, the Court holds that $4,800 of the $6,000 will not be allowed as attorneys' fees and shall be returned to the trustee.

## II.

The Court now turns to the question of the fees for the attorneys of the trustee. The Court of Appeals in *Cybern I*, *supra*, ordered counsel to submit a final application along with the required affidavits and supporting material. 478 F. 2d at 1343–1344. Counsel has filed his amended petition for fees which seeks compensation of $30,000 for 584¾ hours.[3] Counsel has agreed to return anything in excess of $22,500. The trustee, Harry Ash, has waived his fee entirely.

The petition counsel has presented, insofar as it relates to the time spent prior to the allowance of interim fees, is identical to the one before the Court of Appeals in *Cybern I*. A summary of activities has been added as an attempted explanation of the expenditure of time, counsel having explained that no other records are available. Hearings have been held thereon and all other documents required by the Court of Appeals have been filed.

The government and certain creditors have objected to the requested $30,000 fee. At the outset it is important to remember that the total estate is approximately $60,000; thus, the attorneys are requesting one-half of the estate in fees. Also, the Court of Appeals in its *per curiam* opinion, see In re Cybern Education, Inc., 478 F.2d 1340 (7th Cir. 1973), denied an interim award of $22,500 as being unreasonable. Since that time, very little has occurred, in the way of compensable matters, other than the drafting of a relatively simple plan.

Between September 18, 1970 and November 7, 1970, when the decision to terminate was made, 159.5 hours were billed. From November 7, 1970 to July 28, 1971 when the final collection was made, 244.25 hours were billed. Since that last collection date, counsel lists 181 additional hours which they would add to the billable total.

In determining the amount of fees to be awarded, the following factors must be considered. One prime consideration is the economy of administration. See Realty Associates Securities Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446 (1935); Official Creditors Committee of Fox Markets, Inc. v. Ely, 337 F.2d 461 (9th Cir. 1964), cert. denied, 380 U.S. 978, 85 S. Ct. 1342, 14 L.Ed.2d 272 (1965). See also In re Solar Mfg. Corp., 215 F.2d 555 (2d Cir. 1954) (the court awarded $29,000 for a $290,000 estate). The basic test is reasonableness and one must view economy of administration in this light.

First consideration must be for the debtor and its creditors, not for the attorneys. See In re A. Herz, Inc., 81 F.2d 511 (7th Cir. 1936). The attorneys are officers of the Court and are expected to work for and benefit the estate, not themselves. From this it naturally follows that the amount of attorneys fees requested must bear a reasonable relationship to the amounts involved and collected for the estate. See Texas Bank & Trust Co. of Dallas v. Crippen, 235

---

3. Counsel's original petition listed 610½ hours. However, this included time spent in calculating the attorneys' fees and handling the surcharge issue, and these hours are not compensable.

F.2d 472 (5th Cir. 1956); Finn v. Childs Co., 181 F.2d 431 (2d Cir. 1950); In re Imperial 400 Nat., Inc., 274 F. Supp. 351 (D.N.J.1967).

Another major factor is the complexity of the debtor's affairs, the novelty and difficulty of the questions involved, and the results achieved. See In re Coast Investors, 388 F.2d 622 (9th Cir. 1968); In re Imperial 400 Nat., Inc., *supra*. In the instant case, the debtors' affairs consisted of the following. See also *Cybern I, supra*. On September 15, 1970, the trustee was authorized to conduct the business. At the initial meeting it was determined that the debtor had little cash, very little tangible assets and few projects. The only future items were several possible new contracts, the largest of which was for $47,000 with Xerox. Also $10,000 of the accounts receivable were collected soon after. From that date until November 1970, $50,000 more was collected, over one-half coming from the United States government and the University of Illinois. A decision to cease operations was made in November 1970, and operations ceased in February 1971. At an early stage, in order to maintain operations, $15,000 was borrowed from a shareholder, Mr. Mc-Graw.

In April 1971, the trustee sold the assets of a division of the company, Cine-Probst, to its manager for $4,500. He also sold the New York office furniture for $1,350. On June 17, 1971, the Washington office furniture was sold for $2,137, and a sub-lease of the premises was arranged. On July 30, 1971, he sold certain intangibles for $30,000 through the efforts of Dr. Tucker, an employee, who received a $6,000 commission. In sum, the trustee and attorneys were directly responsible for sales of tangible assets totalling $8,987, $24,000 net for the sale consummated by Dr. Tucker, collection of $60,000 in receivables (over one-half paid by two parties), obtaining a $15,000 loan, and determin-

ing that they could not continue under Chapter X. Thus the total monetary benefit to the corporation may be set at $108,000.[4] This hardly justifies an attorney award of $30,000.

Another factor is the expertise of counsel and the relative skill required. In re Imperial 400 Nat., Inc., *supra*. First, no suits were brought to enforce any of Cybern's rights. In light of the fact that at the outset of the trustee's activities it appeared that there were several binding commitments, this is not fully understandable. It appears that they did not investigate the possibility of a wrongful taking of a corporate opportunity by Dr. Tucker, through a project carried on in his name. The trustee allowed the president of the company to handle the Xerox negotiations, which were by far the most important to the company since it involved the largest project ($47,000) and the prospect of an immediate cash inflow of $15,000. Neither the trustee nor his attorney made contact with Xerox, despite the fact that the president of the bankrupt had been in charge while the company suffered. In effect, it appears that they simply let the existing management continue operations.

The trustee filed 22 one-page reports. The final plan was very simple and no complex legal work appears to have been involved. Indeed, the evidence indicates that proper forms were not prepared, nor were records adequately kept.

Certain other factors related to counsel's expenditure of time should be noted here. The record indicates that counsel's sole inquiry into the fee to Gesas and Manos was one conversation with them and some brief correspondence. Neither counsel nor the trustee, Ash, carefully examined the fee. Granted that Ash had the benefit of long acquaintance with them (Gesas and Manos had been attorneys for Mr. Ash, as Trustee, in several hundred proceed-

---

4. Realistically, the benefit was probably closer to $40,000, since the $15,000 loan by McGraw has a priority, the sale by Dr.

Tucker barely involved the trustee, and the collection of $30,000 in receivables was relatively easy.

ings), this did not relieve the trustee and counsel of the obligation to fully investigate and take appropriate action under § 60(d).

Additionally, much of the time spent by counsel was on non-legal duties more appropriately done by the trustee, who himself is a lawyer. For example, one day each was spent regarding the disposition of furniture in the New York and Washington offices, which only resulted in a small sum for the debtor; such work cannot support lawyers' rates.

The final factor to be considered is the labor expended and the wage sought to be applied. Counsel seeks compensation of $30,000 for 584.75 hours, or over $50 per hour. It should be noted that the prevalent wage in private employment is not controlling, since the trustee is an officer of the court, and that time itself is not a major factor. See In re McGrath Mfg. Co. of Omaha, Nebraska, 95 F.Supp. 825 (D.Neb.1951); London v. Snyder, 163 F.2d 621 (8th Cir. 1947). In the instant case, in addition, the petition is lacking in several respects.

The Court of Appeals stated in *Cybern I, supra,* that the petition must be specific. In the present case, the initial petition has been refiled in almost its original form. The late entries are somewhat more specific, yet hardly complete. For example, counsel lists 126.5 hours "Conference" on certain dates yet no mention is made of with whom the conferences were held or in what regard. In addition, there are various entries entitled "correspondence," without addressee or topic.

Under all the circumstances, the Court believes that a request for $30,000 does not have sufficient justification or support. A request for one-half of an estate is not for the benefit of the debtor or the creditors, but is for the attorneys' benefit, and cannot be allowed. The Court believes that $10,000 will adequately compensate counsel in light of the supportable hours and for the amount of time which should reasonably have been spent on this estate.

In this Court's prior opinion, *Cybern II, supra,* the Court left open the question of surcharging the trustee's attorney for the amount of profit he derived from the use of the difference between the interim fee he originally took on October 20, 1971 and his fee herein. He returned the money on January 15, 1974. Since it does not appear that the estate lost income by reason of this interim payment, nor that Gillogly particularly profited by receiving the advance, the Court concludes that a surcharge on this account is unnecessary.

### III.

The Court believes that the plan that has been submitted should be confirmed, amended to provide that the amount available for distribution is increased by the $4,800 to be paid by Gesas and Manos to the trustee. The trustee and his attorney are ordered to prepare all necessary documents and to arrange for a speedy distribution.

It is so ordered.